# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
November 3, 2020

Lyle W. Cayce
Clerk

No. 19-60729

NINONSKA SUATE-ORELLANA, *also known as* NINOSKA SUATE-ORELLANA,

*Petitioner*,

*versus*

WILLIAM P. BARR, *U.S. Attorney General,*

*Respondent.*

Petition for Review of an Order of the
Board of Immigration Appeals
BIA No. A200 965 308

Before JONES, HAYNES, and HO, *Circuit Judges*.[1]

EDITH H. JONES, *Circuit Judge*:

Petitioner Ninoska Suate-Orellana asks this court to reverse an unfavorable decision from the Board of Immigration Appeals (the "Board" or "BIA"). Specifically, she appeals the Board's (1) adverse credibility determination, (2) decision to deny withholding of removal relief, (3) denial of her claim under the Convention Against Torture ("CAT"), and (4) denial

---

[1] Judge Haynes concurs in the judgment only.

No. 19-60729

of her motion to remand the case for consideration of new evidence. Upon review of the record, we DENY Suate-Orellana's petition for review.

## I. BACKGROUND

Suate-Orellana is a Honduran woman. When she was approximately eighteen years old, she was abused by a man named Walter Najera. In 2001, she reported Najera's involvement in the killing of a police officer. Although Najera was subsequently imprisoned, Suate-Orellana fled to Mexico because she was afraid "he would find out" that she had reported him and might retaliate. In 2002, Suate-Orellana returned to Honduras and agreed to marry Najera. Najera was released from prison in 2006 and traveled to the United States where he remains. According to Suate-Orellana, she last spoke to him in 2012 or 2013 when Najera told her that he wanted a divorce so that he could marry his current partner. In 2009, Suate-Orellana began a relationship with a drug dealer named Ramon Ramos. That same year, she fled to Mexico after Ramos found an anonymous note threatening to kill them. Ramos was killed in early 2010. Suate-Orellana believes a drug trafficker named Luis Lopez was behind the murder.

In 2011, Suate-Orellana entered the United States but was denied asylum and subsequently deported that same year. Initially, she did not go back to her hometown because she was "afraid of Luis Lopez" and instead lived "in several places" within Honduras. In 2012, Suate-Orellana learned that Lopez had been killed by Rudy Chavez, who was the leader of a gang called "La Rumba." Chavez attempted to recruit Suate-Orellana and threatened her when she refused to join the gang. Chavez was later killed in 2016.

In 2013, a purported hitman for La Rumba called "El Diablo" approached Suate-Orellana at a bar. He told her that he had been hired to kill her, but, after another individual intervened, he told her he would not kill her

that night but would kill her if he saw her again.  Suate-Orellana left Honduras and, after spending some time in Mexico and "a very short time" hiding with a friend in another city in Honduras, ultimately came to the United States.

In 2014, Suate-Orellana entered the United States, was detained, and completed a reasonable fear interview ("2014 interview").  A merits hearing was held in 2015 ("2015 hearing") concerning her withholding of removal and CAT claims.  The immigration judge ("IJ") made an adverse credibility determination due to "numerous significant inconsistencies throughout the testimony and previous statements of [Suate-Orellana]" based on "the totality of the circumstances."  The IJ also denied Suate-Orellana's claims for relief.  The Board affirmed the IJ's adverse credibility determination and denial of relief based on withholding of removal.  But the Board remanded the CAT claim for additional factual development, recognizing that the Board "does not engage in factfinding in the course of deciding an appeal."  The IJ engaged in the requisite factfinding and again denied the CAT claim.  This time the Board affirmed the IJ decision on appeal.  The Board also rejected Suate-Orellana's motion to remand the record for consideration of new evidence showing that one of her sons was murdered earlier in the year.  Suate-Orellana timely appealed.

## II.  DISCUSSION

We have jurisdiction to review a final order of removal where, as here, "the alien has exhausted all administrative remedies available to the alien as of right." 8 U.S.C § 1252(d)(1).  We review the Board's decisions as well as the IJ's decisions to the extent they were relied upon or adopted by the Board. *See Ahmed v. Gonzales*, 447 F.3d 433, 437 (5th Cir. 2006).

### A.  Adverse Credibility Determination

The agency's adverse credibility determination is reviewed under the substantial evidence standard and is "conclusive unless any reasonable

No. 19-60729

adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); *see Morales v. Sessions*, 860 F.3d 812, 817 (5th Cir. 2017). We defer to the agency's "credibility determination unless, from the totality of the circumstances, it is plain that no reasonable fact-finder could make such an adverse credibility ruling." *Singh v. Sessions*, 880 F.3d 220, 225 (5th Cir. 2018) (quotation marks omitted). We review legal conclusions de novo. *Iruegas-Valdez v. Yates*, 846 F.3d 806, 810 (5th Cir. 2017).

Suate-Orellana contends that her adverse credibility determination was based on several factual errors. Upon review of these purported errors, however, we conclude the Board's decision was based on substantial evidence because the IJ identified numerous omissions and inconsistencies, several of which Suate-Orellana does not dispute occurred. *See Ghotra v. Whitaker*, 912 F.3d 284, 289 (5th Cir. 2019) ("[T]he BIA may consider discrepancies . . . without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim." (quotation marks omitted)). To give one notable example, the IJ decision emphasized that Suate-Orellana claimed she feared Lopez in her 2014 interview even though he had already been dead for two years. Suate-Orellana does not contest this significant inconsistency and suggests memory fragmentation as a potential explanation. The IJ was not required to accept her explanation given other permissible views of the evidence. *See Morales*, 860 F.3d at 818.

Overall, Suate-Orellana's arguments regarding the adverse credibility determination amount to a disagreement with the agency's conclusions, but she does not demonstrate "that no reasonable fact-finder could make such an adverse credibility ruling." *Singh*, 880 F.3d at 225. Substantial evidence, thus, supports the adverse credibility determination.

No. 19-60729

## B. Withholding of Removal

Having affirmed the adverse credibility determination, we reach the merits of the withholding of removal and CAT claims only to the extent that other evidence was presented to support those claims. *Cf. Chun v. I.N.S.*, 40 F.3d 76, 79 (5th Cir. 1994) (choosing not to reach the Board's alternative arguments because the case turned "purely on the IJ's assessment of [the petitioner's] credibility"). We review factual determinations for substantial evidence and legal determinations de novo. *Ghotra*, 912 F.3d at 287–88.

At bottom, we agree with the Board's conclusion that Suate-Orellana's first proposed social group—Honduran women who have been targeted for and resisted gang recruitment after the murder of a gang-associated partner—is not cognizable.[2] We are not convinced that former partners of gang members are sufficiently distinct from anyone that resists gang recruitment. Thus, we agree it lacks particularity and social distinction. *See Orellana-Monson v. Holder*, 685 F.3d 511, 522 (5th Cir. 2012) (concluding a similar group—men who were recruited but refused to join Mara 18—lacked particularity and social distinction).

We also agree with the Board that Suate-Orellana failed to show her membership in her second proposed social group: Honduran women in domestic relationships who are unable to leave or are viewed as property by virtue of their position in a domestic relationship.[3] She has not heard from Najera in many years, and he has requested a divorce so that he can marry his

---

[2] A particular social group must: "(1) consist of persons who share a common immutable characteristic; (2) be defined with particularity; and (3) be socially visible or distinct within the society in question." *Gonzales-Veliz v. Barr*, 938 F.3d 219, 229 (5th Cir. 2019) (summarizing the Board's precedential decisions).

[3] As a result, we need not reach the issue of whether this is a cognizable social group in this case.

current girlfriend in Los Angeles.[4]  These facts are dispositive, and the IJ certainly did not have to discount them based on expert testimony concerning the "effects and cyclical nature of abusive relationships."  The Board's decision to deny withholding of removal was supported by substantial evidence.[5]

### C.  Convention Against Torture

To establish her CAT claim, Suate-Orellana must show that she is more likely than not to be tortured by or with the acquiescence of the Honduran government if repatriated to Honduras. 8 C.F.R. §§ 1208.16(c), 1208.18; *Tamara-Gomez v. Gonzales*, 447 F.3d 343, 350–51 (5th Cir. 2006). We review factual determinations for substantial evidence and legal determinations de novo. *Ghotra*, 912 F.3d at 287–88.

Suate-Orellana contends the Board erred by "fail[ing] to meaningfully consider all of the evidence submitted" that would show she is likely to be tortured upon return to Honduras.  We disagree.  In fact, the Board previously remanded the case to the IJ with explicit instructions to "consider and make findings on the written evidence in the record, assess whether the evidence corroborates her narrative, and enter a new decision concerning protection under the CAT accordingly."  In a ten-page decision, the IJ did exactly that.

We also find that the Board's conclusion that Suate-Orellana did not prove requisite state action is supported by substantial evidence.  The underlying IJ decision engaged in substantive analysis and cited meaningful

---

[4] On the same basis we hold, in the alternative, that any presumption of future harm has been rebutted.

[5] We would reach this conclusion even if we had reversed the Board's adverse credibility determination.

evidence to support its conclusion. For instance, the IJ observed: (1) evidence police executed raids on La Rumba and captured suspected gang members; (2) evidence Chavez was killed in 2016; and (3) the promulgation of a presidential decree creating a commission to restructure the Honduran National police.[6] The Board's conclusion is supported by substantial evidence.

### D. Remand to Consider New Evidence

We review denial of a motion to remand "under a highly deferential abuse-of-discretion standard." *Milat v. Holder*, 755 F.3d 354, 365 (5th Cir. 2014) (citation omitted). Denial based on an error of law constitutes abuse of discretion, and we review questions of law de novo. *Larin-Ulloa v. Gonzales*, 462 F.3d 456, 461 (5th Cir. 2006).

"A motion to remand for new evidence shall not be granted unless it appears to the Board that evidence sought to be offered is material and was not available and could not have been discovered or presented at the former hearing." *Milat*, 755 F.3d at 365 (cleaned up). The Board's decision will not be disturbed unless it is "capricious, racially invidious, utterly without foundation in the evidence, or otherwise so irrational that it is arbitrary rather than the result of any perceptible rational approach." *Id.*; *see Inestroza-Antonelli v. Barr*, 954 F.3d 813, 819 (5th Cir. 2020) (Jones, J., dissenting) ("We do violence to the structure of immigration law when we incorrectly permit cases to be reopened, particularly when the system is being overrun."). When determining materiality, the Board should consider whether the new evidence would likely change the result in the case. *See*

---

[6] Suate-Orellana argues that the IJ "failed to give proper weight" to other evidence. This amounts to a disagreement with how the IJ weighed competing evidence and does not constitute reviewable error.

*Qorane v. Barr*, 919 F.3d 904, 912 (5th Cir. 2019) (concluding that materiality on a motion to reopen "means the evidence must be likely to change the result of the alien's underlying claim for relief");[7] *see, e.g.*, *In the Matter of Coelho*, 20 I. & N. Dec. 464, 471 (BIA 1992).

Suate-Orellana claims the Board made an error of law by creating an extra-statutory evidentiary requirement of an eyewitness account to her son's murder. The Board made no such across-the-board requirement, so Suate-Orellana's attempt to characterize this as an error of law fails. Rather, the Board did not think the new evidence was connected to La Rumba's purported interest in Suate-Orellana.

Suate-Orellana also argues that the Board made an error of law by engaging in impermissible factfinding. We disagree. The Board may evaluate new evidence on a motion for remand to assess whether or not that evidence meets the stringent requirements for remand.[8] Engaging in this exercise does not constitute an error of law; in fact, some courts have faulted the Board for not analyzing evidence in such motions in sufficient detail. *See*, *e.g.*, *Marqus v. Barr*, 968 F.3d 583, 593 (6th Cir. 2020) (criticizing the Board for denying a motion to remand "with little more than a bald statement" and no "real analysis" of why the evidence was immaterial).

We also conclude that the Board did not abuse its discretion in not remanding the case for consideration of new evidence. The new evidence was similar to evidence already considered and rejected by the IJ, and it suffered from the same shortcoming by not showing any connection to Suate-

---

[7] We generally review motions to remand under the same standard as motions to reopen. *See Ramchandani v. Gonzales*, 434 F.3d 337, 340 n.6 (5th Cir. 2005).

[8] The cases cited by Suate-Orellana are in the context of the Board engaging in factfinding when evaluating an IJ decision on appeal, not assessing the materiality of new evidence on remand.

No. 19-60729

Orellana herself.[9]   Thus, the Board reasonably concluded that the new evidence was "indicative of the danger the community faces from gang violence" but did not meaningfully impact the CAT analysis for Suate-Orellana. *See Milat*, 755 F.3d 354, 365 (5th Cir. 2014) (considering it relevant that new evidence was similar to evidence already considered).  The Board did not abuse its discretion in reaching this conclusion.

Suate-Orellana contends that *Zhao v. Gonzales* should determine the outcome on whether to remand.   404 F.3d at 304–05.[10]   We find *Zhao* distinguishable.   In that case, the government acted in a "disingenuous" manner by simultaneously arguing that the new evidence presented was "redundant" when compared to previously considered evidence and then faulting the prior evidence for not containing information that was only contained in the new evidence. *Id.* at 305.  There was no such disingenuous conduct here.   In this case, the Board simply recognized that the new evidence was like previous evidence submitted that was insufficiently connected to threats against Suate-Orellana herself as distinguished from generalized gang violence in the area.

## III.  CONCLUSION

Based on the foregoing we **DENY** the petition for review.

---

[9] The IJ found previous evidence wanting either because (1) threats from members of La Rumba to Suate-Orellana were made by now deceased individuals a significant amount of time ago, or (2) the evidence was not sufficiently connected to Suate-Orellana. For example, the IJ considered evidence "that gang members may have fired shots in the direction of [Suate-Orellana's] son in 2013 and parked a vehicle near Respondent's sister's home in 2016" but nevertheless concluded that such evidence was not enough to show La Rumba would torture Suate-Orellana if she returned to Honduras.

[10] To the extent Suate-Orellana relies on *Inestroza-Antonelli v. Barr*, that case is also factually distinct.  There the changed conditions involved alleged dismantled institutional protections following a military coup.  954 F.3d at 814.