# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
September 21, 2022

Lyle W. Cayce
Clerk

No. 20-60712

Pardeep Kumar,

*Petitioner*,

*versus*

Merrick Garland, U.S. Attorney General,

*Respondent*.

Petition for Review of an Order of the
Board of Immigration Appeals
BIA No. A201 680 166

Before Jones, Southwick, and Oldham, *Circuit Judges*.
Leslie H. Southwick, *Circuit Judge*:

Pardeep Kumar petitions for review of an order of the Board of Immigration Appeals. The order dismissed his appeal of an Immigration Judge's denials of his claims for asylum, withholding of removal, and protection under the Convention Against Torture. He presents several procedural and substantive challenges on appeal.

We DISMISS his petition for review in part and DENY it in part.

No. 20-60712

## FACTUAL AND PROCEDURAL BACKGROUND

Pardeep Kumar, a native and citizen of India, entered the United States without inspection in January 2019.  On January 21, 2019, an asylum officer conducted a credible fear interview with Kumar and found that he had a credible fear of persecution if he returned to India.  The asylum officer then referred his case to an immigration judge ("IJ").  Shortly after, the Department of Homeland Security issued Kumar a Notice to Appear and charged him as an alien removable for entering the United States without valid entry documents and for being present in the United States without admission or parole.

On April 18, 2019, the IJ sustained both charges of removability. Kumar then told the IJ he wanted to apply for asylum and withholding of removal, and later mailed the court a formal application.  He also attached a declaration to his application.  The IJ scheduled Kumar's merits hearing for July 23, 2019, but the hearing was continued because Kumar was in the hospital due to the physical effects of his participation in a hunger strike.

On November 15, 2019, the IJ convened court again for the merits hearing on Kumar's applications.  Kumar moved to continue the hearing so he would have 20 to 25 days for a video, photographs, and other documents to arrive from India to support his asylum claim.  The IJ denied his request for failure to show good cause for continuance.

The hearing proceeded.  Kumar wished to testify on his own behalf, so the IJ offered him the opportunity to provide a statement or answer questions.  Kumar chose to be questioned.  Through the IJ's questioning, Kumar explained that he feared returning to India because he believed the Bharatiya Janata Party ("BJP"), India's ruling political party, would kill him if he returned to India.

No. 20-60712

The following was Kumar's testimony. He worked for another party, the Indian National Lok Dahl Party ("INDP"), and experienced attacks from the BJP as a result. The attacks began on July 13, 2018, when, as part of his role with the INDP, he was plastering posters in a village. Four members of the BJP approached him and told him to stop plastering the posters and leave the INDP. Kumar refused, but the members continued to attempt to persuade him by offering him the opportunity to sell illegal drugs. Kumar again refused, resulting in the members punching, kicking, and slapping him. He screamed, which caused people in nearby houses to come investigate. The BJP members ran off once they saw people arrive but threatened Kumar before they left that if he did not leave the INDP, it "would not be good for [him]."

Kumar left the village and returned to his house. He described his injuries as "minor," consisting of swelling, and stated he treated his injuries with at-home pain medication. He and his uncle attempted to report the attack to the police, but the police refused to file a report. They told him that they would not report the party because it was the current government and if he persisted, they would "arrest [him] and put [him] in prison."

On October 5, 2018, the BJP attacked Kumar again when he was leaving an INDP blood donation event. He was biking home from the event when a vehicle approached and a person signaled for him to stop. He stopped, and four people exited the car holding hockey sticks and other wooden sticks. They beat him with the sticks and told him that they "warned [him] previously" to leave the party, but he did not listen. His screams caused nearby farmers to come to the scene. The attackers left once they saw the farmers. They warned: "[w]e came to finish you off . . . [w]hen we get hold of you again, we'll make sure you're dead." Kumar went to the hospital for three days for treatment of his injuries. He then moved to his uncle's

house for four to five days before leaving that same month for the United States out of fear of future attacks.

The IJ made an adverse credibility determination against Kumar and denied Kumar's claims for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT") on the merits. Kumar timely filed his notice of appeal of the IJ's decision to the Board of Immigration Appeals ("BIA"). In his brief to the BIA, he also moved for a remand to the IJ because he now possessed the previously unavailable evidence for which he had sought a continuance, including a new personal declaration, a medical evaluation, affidavits from other INDP members, and photographs of his injuries. The BIA initially mistakenly dismissed his appeal for failure to file an appellate brief. Kumar filed a motion for reconsideration on this issue. The BIA reconsidered his appeal but ultimately denied his applications for asylum, withholding of removal, and CAT protection on the merits, and also denied his motion to remand.

Kumar petitioned this court for review.

## DISCUSSION

We review the BIA's factual findings for substantial evidence and rulings on questions of law *de novo*. *Mireles-Valdez v. Ashcroft*, 349 F.3d 213, 215 (5th Cir. 2003) (citation omitted). "Under substantial evidence review, we may not reverse the BIA's factual determinations unless we find not only that the evidence supports a contrary conclusion, but that the evidence *compels* it." *Chun v. INS*, 40 F.3d 76, 78 (5th Cir. 1994) (citing *INS v. Elias-Zacarias*, 502 U.S. 478, 481 n.1 (1992)). It is the petitioner's burden to show that "the evidence is so compelling that no reasonable factfinder could reach a contrary conclusion." *Chen v. Gonzales*, 470 F.3d 1131, 1134 (5th Cir. 2006).

No. 20-60712

Before proceeding with such review, though, we must satisfy ourselves of our jurisdiction even if neither party raises the question. *Goonsuwan v. Ashcroft*, 252 F.3d 383, 385 (5th Cir. 2001). We only have jurisdiction over a petition for review from the BIA if the alien has "exhausted all administrative remedies available to the alien as of right." 8 U.S.C. § 1252(d). A remedy is available to the alien as of right when "(1) the petitioner could have argued the claim before the BIA, and (2) the BIA has adequate mechanisms to address and remedy such claim." *Omari v. Holder*, 562 F.3d 314, 318–19 (5th Cir. 2009). This means the petitioner "must raise, present, or mention an issue to the BIA," putting the BIA on notice of his claim before raising it in this court. *Id.* at 321–22 (quotation marks and citations omitted).

The petitioner may put the BIA on notice either in his brief on appeal to the BIA or in a motion to reconsider. *Martinez-Guevara v. Garland*, 27 F.4th 353, 360 (5th Cir. 2022). If the petitioner's claim "alleg[es] some new defect that the BIA never had a chance to consider" because it is based on "a wholly new ground for relief that arises only as a consequence of the Board's error," Section 1252(d) requires the petitioner to present the claim to the BIA in a motion for reconsideration before seeking this court's review. *Id.* at 360 (quotation marks, citations, and emphasis omitted). Examples of a claim in this category include allegations that the BIA misapplied the standard of review or engaged in impermissible factfinding. *Avelar-Oliva v. Barr*, 954 F.3d 757, 766 (5th Cir. 2020). The chief inquiry in making this determination is "whether the Board had a *chance* to consider it," regardless of whether it actually decided or considered the issue. *Martinez-Guevara*, 27 F.4th at 360.

Kumar challenges the BIA's denial of his applications for asylum, withholding of removal, and protection under CAT both substantively and procedurally. Substantively, he argues the BIA erroneously concluded that he did not suffer past persecution, could relocate to another part of India, and

was not entitled to CAT relief. These substantive claims are exhausted because they were not created by the proceedings before the BIA. *See Dale v. Holder*, 610 F.3d 294, 300 (5th Cir. 2010). Rather, they address errors that were "raised or lost at the BIA" and focus on answers to issues he previously raised — for instance, whether he is eligible for asylum. *Martinez-Guevara*, 27 F.4th at 360.

Kumar raised these substantive claims before the BIA, exhausting them and allowing us to address their merits. His other substantive challenge relates to the BIA's denial of his motion to remand. He argues that the BIA erred in concluding that the new evidence he presented would not have changed the outcome of his case. This, too, is a substantive argument "raised or lost at the BIA." *Id.* It is also exhausted.

On the other hand, we next discuss that only some of Kumar's procedural arguments are exhausted.

### I.    *Exhaustion of Kumar's procedural arguments*

We first consider which of Kumar's procedural claims are properly before us. For those that are, we evaluate the claims in the subsequent section of our opinion.

#### a.    *Asylum claims*

The BIA concluded that Kumar was ineligible for asylum because the harm he endured was not severe enough to constitute past persecution. Further, the BIA determined he did not have a well-founded fear of future persecution because he could reasonably relocate within India. To be eligible for asylum, a petitioner must establish either past persecution or a well-founded fear of persecution if forced to return. 8 U.S.C. §§ 1101(a)(42)(A), 1158(b)(1)(B)(i).

Kumar makes several procedural challenges to the BIA's conclusion that he did not suffer past persecution. First, he argues the BIA "applied the wrong standard" in concluding that he did not suffer past persecution. He says the BIA applied the wrong standard because it did not consider the cumulative effect of his experiences and, instead, erroneously viewed them individually, which mischaracterized the harm he endured as too minor to constitute persecution.

Kumar did not raise this claim in a way that would have put the BIA on notice that the BIA was required to consider his evidence cumulatively. *See Omari*, 562 F.3d at 321–22. Kumar makes two references to this concept in his brief to the BIA: (1) that the "violent facts of [his] case — two beatings, property destruction, and death threats — constitute past persecution"; and (2) that "the cumulative effect of multiple beatings, threats, and assaults also amounts to persecution regardless of permanent or serious injury." Though this argument mentions a cumulative effect of his experiences, none of the arguments he presents to the BIA speak to his claim that the IJ failed to look at his evidence holistically. The BIA therefore was not given a chance to consider that it needed to apply a particular standard when evaluating Kumar's evidence. *See Martinez-Guevara*, 27 F.4th at 360–61. Accordingly, we do not have jurisdiction to consider this claim.

Kumar also argues that the BIA erred procedurally in concluding he did not suffer past persecution because the BIA applied irrelevant caselaw. He says the cases the BIA applied were sufficiently distinguishable from his factual circumstances such that relying on them led to an erroneous conclusion. *See Eduard v. Ashcroft*, 379 F.3d 182 (5th Cir. 2004); *Abdel-Masieh v. INS*, 73 F.3d 579 (5th Cir. 1996); *Qorane v. Barr*, 919 F.3d 904 (5th Cir. 2019); *Morales v. Sessions*, 860 F.3d 812 (5th Cir. 2017).

This claim, too, is unexhausted. The IJ did not rely on any case that Kumar cites now, and Kumar identified only one of the four cases he challenges in his brief to the BIA. In identifying that case, *Eduard*, he did not argue it was irrelevant. In fact, he argued it *was* relevant to support that individual injuries need not be of extreme severity. This argument therefore falls in the category of claims that "arise[] *only* as a consequence of the Board's error." *Martinez-Guevara*, 27 F.4th at 360 (quotation marks and citation omitted). Because Kumar challenges the BIA's application of the cases that were not similarly applied by the IJ, it constitutes an error that necessarily could not have been raised to the BIA previously. *See Omari*, 562 F.3d at 319. Kumar cannot satisfy Section 1252's exhaustion requirements for this claim.

Finally, Kumar challenges the BIA's decision affirming the IJ's denial of his asylum claim on the basis that he did not establish a well-founded fear of persecution. When assessing whether a petitioner has a well-founded fear of future persecution, the BIA must consider whether the petitioner could reasonably relocate within his home country. 8 C.F.R. § 208.13. If he can, he is not considered to have a well-founded fear of future persecution. *Id.* If the petitioner did not suffer past persecution, then the "petitioner bears the burden to establish that relocation is unreasonable, unless the persecution is by a government or is government-sponsored." *Munoz-Granados v. Barr*, 958 F.3d 402, 407 (5th Cir. 2020).

Kumar argues the BIA erred in this analysis because it improperly applied the burden of demonstrating relocation upon Kumar when, instead, the Government should have had to show relocation is unreasonable because, as the ruling party in India, the BJP is considered the national government. Here, too, Kumar did not make this argument in his brief to the BIA. At most, he explained to the BIA that as the ruling party in India, the BJP "runs India's national government," but he does not argue this information meant

the IJ should have shifted the burden to the Government to demonstrate it was reasonable for Kumar to relocate in India.

A petitioner must "fairly present an issue to the BIA to satisfy Section 1252(d)'s exhaustion requirement." *Omari*, 562 F.3d at 321. This requires "some concrete statement" to which the BIA could reasonably tie a petitioner's claims, even if that argument was not yet fully developed before the BIA. *Id.* Kumar did not make a concrete statement to the BIA that would put the BIA on notice that he sought to challenge the standard the IJ used to assess whether he could relocate. We therefore cannot say he exhausted this claim. Kumar's procedural claims challenging the BIA's dismissal of his asylum claim are thus unexhausted, and we do not have jurisdiction to consider them.

### b.    Due-process claims

Kumar also argues the BIA denied him due process. He contends the BIA affirmed three of the IJ's errors that should have been corrected and those affirmances denied him of a fair hearing on a fully developed record. Those errors are as follows: (1) the IJ's failure to correct a discrepancy in the record; (2) the IJ's failure to advise Kumar that he could seek a medical evaluation or submit a written declaration; and (3) the IJ's improper denial of Kumar's continuance.

First, Kumar identifies the discrepancy in the record as an alleged error by the IJ that contributed to the adverse credibility finding. The IJ noted in her oral decision that she doubted Kumar's credibility because he testified that his father, Balwan Singh, died in 2013, but an affidavit Kumar submitted explained that the affiant knew of Kumar's attacks because the respondent's father, Balwan Singh, had told him of the events that took place in 2018. The IJ explained that this discrepancy contributed to her doubt

surrounding the credibility of Kumar's evidence, and therefore it played a part in Kumar's adverse credibility finding.

Kumar clarifies on appeal that both his uncle and his father are named Balwan Singh.  Although there appeared to be a discrepancy, he says there was none.  Kumar made this argument before the BIA.  He argued the IJ violated his due process rights because she did not attempt to develop the factual record and question the discrepancy.  The BIA addressed this point but rejected Kumar's arguments.  Thus, this argument was fully exhausted as it can be considered "reasonably tied" to what Kumar argued below. *Martinez-Guevara*, 27 F.4th at 361.

Kumar's second argument is that he was denied due process because the BIA affirmed the IJ's failure to advise him that he could seek a medical evaluation or submit a written declaration.   On appeal to the BIA, Kumar argued that the IJ erred because she "failed to advise Pardeep [Kumar] that he could submit a written declaration in place of in-court testimony" and "fail[ed] to advise him of the possibility of obtaining a medical evaluation while in detention."   Like his claim that the IJ erred in failing to correct a discrepancy in the record, by "rais[ing] the same claims to the Board on appeal from the I.J.," the BIA was on notice and had a chance to consider the claim. *Id.* at 360.  This claim is also exhausted.

Finally on this category of claims, Kumar argues that the BIA denied him due process because it affirmed the IJ's denial of his motion to continue his hearing.  Kumar presents his argument here about the IJ's denial of his continuance in the same way he made it to the BIA.  This argument is an instance where Kumar "accuses the Board of repeating the legal and factual errors that [he] asked it to correct when [he] appealed the I.J.'s adverse ruling." *Id.*  Thus, there is no need for Kumar to have raised the issue in a motion to reconsider.  That would only "call[] the BIA to ponder once again

the very issue upon which it has already ruled." *Dale v. Holder*, 610 F.3d 294, 301 (5th Cir. 2010). This claim, like his other due-process claims, is exhausted, and we have jurisdiction to consider them all.

### c.    *Meaningful consideration claims*

Finally, Kumar argues on appeal that the BIA erred procedurally because it did not give meaningful consideration to all the relevant evidence in his case. "The BIA's decision must reflect a meaningful consideration of all the relevant evidence supporting an asylum seeker's claims." *Cabrera v. Sessions*, 890 F.3d 153, 162 (5th Cir. 2018). This means the BIA must address "key evidence," but it does not need to "address evidentiary minutiae or write any lengthy exegesis." *Abdel-Masieh*, 73 F.3d at 585.

Kumar identifies various reasons the BIA failed to provide him with meaningful consideration. First, he argues the BIA failed to address key country conditions evidence because the BIA did not address affidavits he attached as part of his motion to remand that discussed how deported INDP workers were attacked upon return and also the significance of India's nationwide identification system. He argues that if the BIA considered this, it would have concluded he could not reasonably relocate within India. Second, he says the BIA failed to consider a medical evaluation taken on January 31, 2020, that would have shown the severity of his attacks. Lastly, he argues the BIA failed to consider a series of arguments he provided on the IJ's mischaracterization of evidence — specifically Kumar's affidavits, his testimony on the BJP's motive, and his testimony on government acquiescence.

Only some of these claims are exhausted. His arguments that India's identification system shows he cannot relocate and that the IJ mischaracterized evidence are exhausted because he presented those arguments to the BIA. Where a petitioner asks the BIA to correct the IJ's

error, and then on appeal the petitioner argues the BIA committed the same error, the claim is exhausted. *Martinez-Guevara*, 27 F.4th at 361. Here, Kumar claimed before the BIA that the IJ mischaracterized his testimony and affidavits; in the same way, he now claims the BIA overlooked that same evidence and mischaracterization. Kumar also raised the argument in his BIA brief that India's identification system shows he cannot relocate within India. We therefore have jurisdiction over these claims.

We lack jurisdiction to consider his other arguments. We cannot consider whether the BIA failed to give meaningful consideration either to Kumar's affidavits that his fellow INDP workers were attacked upon return to India, or to his January 31, 2020, medical evaluation. Evidence on those claims was not before the IJ. Kumar was seeking that evidence when he moved to continue his merits hearing. These claims cover new errors that arose out of the BIA's decision; therefore, they must be raised in a motion for reconsideration before being presented to us. *Dale*, 610 F.3d at 298–99. Thus, Kumar has not exhausted his claim that the BIA failed to address the evidence he included as part of his motion to remand.

## II.    *Merits of Kumar's claims*

We now consider the merits of Kumar's preserved claims. All Kumar's substantive claims remain. His only preserved procedural arguments are that the BIA denied him due process, and that the BIA failed to give meaningful consideration to his arguments that the IJ mischaracterized his testimony and affidavits.[1]

---

[1] On appeal to our court, Kumar also argues the BIA committed multiple legal errors by affirming the IJ's adverse credibility finding. The BIA specifically noted in its decision that, while the IJ made an adverse credibility determination, it was assuming Kumar's credibility and addressing his claims on the merits because the IJ made alternative rulings on the merits of his claims as well. We therefore review the BIA's decision on this

No. 20-60712

Kumar argues the BIA should have found him eligible for asylum because the harm he endured was sufficient to constitute past persecution. Because the additional evidence Kumar provided, detailing continued threats on his family, was part of his denied motion to remand, the BIA's past persecution decision encompassed only the two beatings that he endured while in India. Our review therefore also only encompasses those occurrences.

"Persecution is . . . an extreme concept." *Morales*, 860 F.3d at 816 (citation omitted). The BIA has defined persecution as:

> The infliction of suffering or harm, under government sanction, upon persons who differ in a way regarded as offensive (*e.g.*, race, religion, political opinion, etc.), in a manner condemned by civilized governments. The harm or suffering need not be physical, but may take other forms, such as the deliberate imposition of severe economic disadvantage or the deprivation of liberty, food, housing, employment or other essentials of life.

*Abdel-Masieh*, 73 F.3d at 583–84 (quoting *Matter of Laipenieks*, 18 I. & N. Dec. 433, 456–57 (BIA 1983), *rev'd on other grounds*, 750 F.2d 1427 (9th Cir. 1985)). Treatment that is merely offensive or purely verbal harassment and intimidation is not sufficient. *Gjetani v. Barr*, 968 F.3d 393, 397 (5th Cir. 2020). Rather, persecution "has the quality of a *sustained*, systematic effort to target an individual on the basis of a protected ground." *Id.* A past persecution claim also requires that the applicant have suffered persecution "at the hands of 'the government or forces that a government is unable or unwilling to control.'" *Munoz-Granados*, 958 F.3d at 406–07 (quoting *Tesfamichael v. Gonzales*, 469 F.3d 109, 113 (5th Cir. 2006)).

---

basis too. *See Efe v. Ashcroft*, 293 F.3d 899, 903 (5th Cir. 2002) ("We only review decisions made by the Board. We normally do not consider the rulings and findings of immigration judges unless they impact the Board's decision.") (citation omitted).

No. 20-60712

The BIA affirmed the IJ's finding that Kumar's experiences were not severe enough to amount to persecution. Although we recognize Kumar experienced harm at the hands of the BJP, the two beatings and subsequent injuries he suffered do not *compel* a contrary conclusion that the harm endured amounts to persecution. *See Chun*, 40 F.3d at 78. Indeed, we have determined petitioners did not suffer persecution in cases similar to Kumar's. *See, e.g.*, *Gjetani*, 698 F.3d at 395 (describing multiple death threats and beating requiring hospitalization did not constitute persecution); *Abdel-Masieh*, 73 F.3d at 582, 584 (two three-hour detentions with beatings and continual tracking was not persecution). Accordingly, because the evidence does not compel a contrary result, the dismissal of his asylum claim is supported by substantial evidence.

The dismissal of Kumar's claim for withholding of removal is also supported by substantial evidence, as a petitioner must meet a higher burden of proof than asylum to be entitled to withholding of removal. "The standard for obtaining withholding of removal is even higher than the standard for asylum, requiring a showing that it is more likely than not that the alien's life or freedom would be threatened by persecution on one of those grounds." *Orellana-Monson v. Holder*, 685 F.3d 511, 518 (5th Cir. 2012).

His final claim is for protection under CAT. A successful CAT claim requires that a petitioner prove "that it is more likely than not that he or she would be tortured if removed to the proposed country of removal"; in addition, the torture must be inflicted "by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." 8 C.F.R. § 1208.16(c)(2); 8 C.F.R. § 208.18(a)(1). Past torture is one consideration in determining whether a petitioner is likely to be tortured upon return to his home country. *Id.* § 1208.16(c)(3)(i). To obtain relief, a petitioner need not show all the elements of a persecution claim but must meet "the higher bar of torture." *Roy v. Ashcroft*, 389 F.3d 132, 140 (5th Cir.

2004) (citation omitted).  Torture constitutes "any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted . . . for any reason based on discrimination of any kind" — this includes "intentional infliction or threatened infliction of severe physical pain or suffering" and "threat of imminent death."  8 C.F.R. § 1208.18(a)(1), (a)(4)(i), (a)(4)(iii).

Kumar argues the BIA erroneously concluded the beatings and threats he received did not constitute torture and the government did not acquiesce in his torture.  These claims, too, we review for substantial evidence.  *See Martinez-Lopez v. Barr*, 943 F.3d 766, 772 (5th Cir. 2019).  The evidence does not compel a contrary conclusion to the BIA's decision affirming that Kumar did not endure mistreatment that rose to the level of torture.  Because the BIA's conclusion that Kumar did not suffer persecution was supported by substantial evidence, "[i]t follows *a fortiori* [the harm] do[es] not constitute torture," as torture is an even higher bar.  *Qorane v. Barr*, 919 F.3d 904, 911 (5th Cir. 2019).  A petitioner must meet both elements of a CAT claim.  Thus, despite Kumar's arguments regarding government involvement, our holding that the BIA did not err in determining that Kumar did not suffer torture also means the BIA did not err in denying his CAT claim.

Kumar also claims the BIA erred substantively for one other reason.  He argues that because several of the BIA's conclusions were not supported by substantial evidence, the decision was not substantively reasonable.  The conclusions he challenges are that (1) Kumar's persecutors were not the Indian government itself; (2) the national identification system did not show INDP workers could not live safely throughout India; and (3) Kumar's medical evaluation did not show the extent of his BJP beatings.

As a reminder, under the substantial evidence standard, "we must defer to the BIA's factual findings unless the evidence is so compelling that no reasonable fact finder could fail to find otherwise."  *Mikhael v. INS*, 115

F.3d 299, 304 (5th Cir. 1997).  None of the findings Kumar challenges satisfy this standard.  The evidence Kumar presented showed only the BJP, not the Indian government itself, supported or sponsored the attacks against Kumar. Thus, it was reasonable for the BIA to conclude that the BJP's significant influence did not transform it into the Indian government.  Indeed, panels of our court have already upheld identical findings.  *Singh v. Whitaker*, 751 F. App'x 565, 567 (5th Cir. 2019); *Khadiwal v. Lynch*, 667 F. App'x 460, 461 (5th Cir. 2016) (holding petitioner did not show BJP, his persecutor, was the national government).

It was also reasonable for the BIA to conclude that the existence of a national identification system was insufficient to show Kumar could not live safely throughout India.  Aside from referring to the system, Kumar did not present evidence that workers of his party were unable to live safely because of this system.  The evidence thus does not compel a contrary conclusion that the identification system in itself shows Kumar could not reasonably relocate within India.

Similarly, the BIA's evaluation of Kumar's January 31, 2020, medical evaluation included as part of his motion to remand was not unreasonable. The BIA concluded the evaluation did not relate to his claims because it documented injuries related to his hunger strike rather than BJP attacks.  The medical evaluation largely describes Kumar's medical status as it relates to his hunger strike.  The evaluation mentions Kumar's experience with the BJP in one paragraph but does not relate his medical symptoms to their attacks, only to his hunger strike.  The evaluation therefore does not compel the conclusion that it corroborates the extent of his persecution from the BJP. This finding is also supported by substantial evidence.

Next, we consider Kumar's preserved procedural arguments.  Kumar argues that the BIA denied him due process for various reasons.  "When

considering a petition for review, we review constitutional issues — such as due process claims — *de novo*." *Santos-Alvarado v. Barr*, 967 F.3d 428, 439 (5th Cir. 2020). To show that the BIA denied a petitioner due process, the petitioner must "make an initial showing of substantial prejudice." *Okpala v. Whitaker*, 908 F.3d 965, 971 (5th Cir. 2018). This requires the petitioner to "make a *prima facie* showing that the alleged violation affected the outcome of the proceedings." *Id.*

Kumar makes three arguments concerning due process: (1) the BIA erred in upholding the IJ's failure to correct a discrepancy in the record that the IJ relied on to make her adverse credibility finding; (2) the IJ failed to advise Kumar he could obtain a medical evaluation because, had he known, he would have submitted a more detailed declaration than he did at the time as a *pro se* party; and (3) the IJ denied Kumar's motion for continuance despite the existence of good cause.

As to the discrepancy in the record arising from the similarity of his father's and uncle's names, Kumar cannot show any prejudice because the BIA stated that it assumed on appeal that Kumar was credible and addressed his claims accordingly. Likewise, he was not prejudiced by the IJ's alleged failure to inform him that he could obtain a medical evaluation. The record shows he was aware of his right to provide documentary evidence and that he could submit a written statement and medical records. There is no support, then, for finding that the IJ's failure to inform him of this right created prejudice. Moreover, although the IJ has a duty to facilitate the testimony of *pro se* applicants, the IJ may not "take on the role of advocate" and instruct which documents would be most persuasive to submit. *See In re J.E.F.*, 23 I. & N. Dec. 912, 922 (BIA 2006). The advice Kumar argues was necessary goes beyond merely facilitating a *pro se* petitioner's testimony. The BIA therefore did not deny him due process in affirming the IJ's alleged failure to instruct him that he could obtain a medical evaluation.

Finally, Kumar argues the BIA denied him due process when it affirmed the IJ's denial of his motion to continue because the denial prevented him from presenting evidence that would allow a full and fair hearing before the IJ.  We see no substantial prejudice to Kumar from his inability to present this evidence.  *See Okpala*, 908 F.3d at 971.  Again, the medical evaluation he sought to submit was not relevant to his claims, as it mostly discussed his hunger strike injuries, not BJP attacks.  It therefore could not supplement or aid his testimony, and no prejudice resulted from the absence of that evidence.

Some of his other evidence would be better considered as relevant to a claim of a threat of future persecution.  After Kumar left India, there were said to be threats to his family and that the BJP desired to find him.  Whatever future threats there may have been, Kumar testified to the IJ at his merits hearing that, in the past, he only sustained "minor injuries" that did not require much treatment.  The IJ relied on his testimony regarding his injuries in making her past persecution finding.  The cases finding persecution based on a pattern of assaults are accompanied by much more severe attacks and threats than those to which Kumar testified without the additional evidence.  *See, e.g., Tamara-Gomez v. Gonzales*, 447 F.3d 343, 348 (5th Cir. 2006) (describing numerous threats to the petitioner and his family, bombing of the petitioner's neighborhood with five casualties, and murders of other people involved with petitioner).

Petitioner's effort to demonstrate substantial prejudice fails because, based on the record, we cannot conclude that even with the evidence, "the outcome of [the petitioner's] proceeding would have been any different." *See Ogunfuye v. Holder*, 610 F.3d 303, 306 (5th Cir. 2010).

His final procedural argument is that the BIA failed to provide his case with meaningful consideration because it did not consider his arguments

No. 20-60712

concerning the IJ's alleged mischaracterizations of evidence. The three errors alleged concern the specificity of Kumar's affidavits, his testimony about the brutality of the attacks against him, and his testimony about government acquiescence. Kumar's arguments are based on the requirement that the BIA's decision reflect meaningful consideration of "the relevant substantial evidence supporting the alien's claims." *See Abdel-Masieh*, 73 F.3d at 585. Although the BIA's decision does not need to "address evidentiary minutiae or write any lengthy exegesis," its decision must reflect such consideration. *Id.* Failure to do so is error. *Cabrera*, 890 F.3d at 163.

The BIA did not specifically discuss the IJ's interpretation of the evidence, but it did reference the particular testimony on the severity of his attacks, the police involvement, and the affidavits that Kumar alleged the IJ misconstrued. "We do not require the BIA to specifically address every piece of evidence put before it." *Abdel-Masieh*, 73 F.3d 585. Even if the BIA did not agree with Kumar's contention about mischaracterizations, the BIA did mention the evidence that Kumar alleges it failed to consider meaningfully. This is sufficient.

IV. *Motion to remand*

Finally, Kumar challenges the BIA's denial of his motion to remand. The BIA has authority "to remand an open case to the immigration judge for further proceedings." *Wang v. Ashcroft*, 260 F.3d 448, 451 (5th Cir. 2001). A motion to remand is "reserved for new evidence that is both material and was not available at the time of the underlying proceedings." *Cardona-Franco v. Garland*, 35 F.4th 359, 365 n.4 (5th Cir. 2022) (quotation marks and citation omitted); *Ramchandani v. Gonzales*, 434 F.3d 337, 340 n.6 (5th Cir. 2005) (explaining the requirements for motion to reopen and motion to remand are the same). Our review of the denial of a motion to remand is for an abuse of discretion, a standard which gives significant discretion to the

BIA.  *See Suate-Orellana v. Barr*, 979 F.3d 1056, 1062 (5th Cir. 2020).  We will overturn the BIA's decision only if it is "capricious, racially invidious, utterly without foundation in the evidence, or otherwise so irrational that it is arbitrary rather than the result of any perceptible rational approach."  *Id.* (citation omitted).

Kumar argues the BIA abused its discretion in denying his motion to remand because the evidence he presented would have changed the outcome of his case.  We conclude, though, that it was reasonable for the BIA to conclude that the new evidence Kumar presented would not change the outcome of his case.  The medical evaluation Kumar sought to submit would not have altered his case because the evaluation did not discuss symptoms and injuries related to the BJP attacks.  Further, it was reasonable for the BIA to conclude Kumar's new declaration or affidavits would not have influenced his case, considering he already supplied a declaration and his testimony describing his injuries as minor could not be remedied with his additional evidence.

The BIA's decision to deny his motion to remand does not reach the level of an abuse of discretion.

The petition for review is DISMISSED in part for lack of jurisdiction and DENIED in part in accordance with this opinion.