# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

March 16, 2023

Lyle W. Cayce
Clerk

No. 22-60144

Romulus Matei; Madalina Barbu,

*Petitioners*,

*versus*

Merrick Garland, *U.S. Attorney General*,

*Respondent*.

Petition for Review of an Order of the
Board of Immigration Appeals
Agency Nos. 205-388-987; 205-388-988

Before Richman, *Chief Judge*, and King and Higginson, *Circuit Judges*.

Per Curiam:*

Romulus Matei and Matei's derivative beneficiary, Madalina Barbu, petition for review of the Board of Immigration Appeals' (BIA) decision affirming without opinion the immigration judge's (IJ) denial of Matei's application for asylum and withholding of removal. Matei claims asylum based on alleged past persecution and a fear of future persecution in Romania

---

* This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

because he is of Roma ethnicity.  We grant the petition for review, vacate the order of removal, and remand to the BIA.

# I

Matei, a native and citizen of Romania, entered the United States illegally in 2012.  The day Matei entered the United States, the Department of Homeland Security (DHS) served him with a notice to appear, charging him as an alien present in this country without admission or parole.  Less than a week later, DHS initiated removal proceedings.  Barbu is Matei's wife and derivative beneficiary.[1]  She has withdrawn her own application.  Therefore, this court focuses solely on Matei's claims.

Matei filed an I-589 application for asylum and withholding of removal.  The application claimed that he is of Roma ethnicity and would face persecution on account of this ethnicity in Romania.  Although he initially also sought relief under the Convention Against Torture (CAT), he withdrew that claim.

The IJ held a removal hearing at which Matei testified regarding his circumstances.  First, while he was in school, his classmates called him a "gypsy" and accused him of stealing food.  When he was accused of stealing food, the school director gave him a warning and said that if it happened again, he would be expelled.

Second, in 1994, when Matei was in seventh grade, he was in a restaurant with some friends when two classmates came over and asked Matei's friends "how could they sit down with such a person like [Matei], how could they talk to [him]."  One of Matei's friends stood up and told the classmates to leave them alone, but one of the classmates pushed Matei.  In response, Matei "pushed somebody."  As a result of the incident, Matei was

---

[1]See 8 U.S.C. § 1158(b)(3)(A) ("A spouse or child . . . of an alien who is granted asylum under this subsection may . . . be granted the same status as the alien if accompanying . . . such alien.").

convicted of public disturbance and fighting and served three months of a six-month sentence. He was the only Roma involved and the only person convicted. He claims the police hit him and called him a "gypsy." Matei believes he received such a harsh punishment because the father of one of the classmates "had a great position in the society."

Third, Matei testified that he left school in seventh grade to work on farms. In 1998, he went to the labor department to try to obtain better employment. The department told him an eighth-grade diploma was mandatory and that as a "gypsy" without an education, he should go back to the farm where he used to work and could find work. Matei was able to consistently find work on farms and in construction but still lived in poverty. Although he went to Italy in 2003 to work, he returned to Romania after less than three months because he believed conditions were better in Romania.

When asked why he left Romania in 2012, Matei stated that he was afraid his family was going to increase in size and he would not have the money to support them. When asked why he would not go back to Romania, Matei stated, "I do not have any reasons to go back because I have nothing there. The last thing that I had I sold out in order to come here." He later stated that it would be hard in Romania because he has "another two children born here, and that'll be very hard to take care of five children there." In 2017, he sent his thirteen-year-old daughter back to Romania to care for her great grandmother.

The IJ found Matei's testimony credible. However, she held that Matei had failed to show he suffered past persecution and failed to show he had a well-founded fear of future persecution. The IJ also held that because Matei had failed to satisfy the lower standard for asylum, he could not meet the more demanding standard for withholding of removal. The BIA affirmed the IJ's decision without opinion, so the IJ's decision became the final agency determination. Matei timely appealed. This court has jurisdiction under 8 U.S.C. § 1252(a).

No. 22-60144

## II

An "applicant may qualify as a refugee," and thus be eligible for asylum, "either because he or she has suffered past persecution or because he or she has a well-founded fear of future persecution."[2] "The burden of proof is on the applicant for asylum to establish that he or she is a refugee...."[3] However, "[a]n applicant who has been found to have established...past persecution shall also be presumed to have a well-founded fear of persecution on the basis of the original claim."[4]

"Persecution is...an extreme concept."[5] "Examples of persecution include, but are not limited to, threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom,"[6] and the "harm or suffering need not be physical."[7] Persecution "does not encompass all treatment that our society regards as unfair, unjust, or even unlawful or unconstitutional."[8] Further, "harassment, intimidation, threats, or even assault" do not necessarily constitute persecution.[9]

This court typically "only review[s] decisions made by the" BIA and considers the IJ's decision only to the extent that it "impact[s] the [BIA]'s

---

[2] 8 C.F.R. § 1208.13(b); *see* 8 U.S.C. § 1101(a)(42)(A); *Cabrera v. Sessions*, 890 F.3d 153, 159 (5th Cir. 2018).

[3] 8 C.F.R. § 1208.13(a).

[4] 8 C.F.R. § 1208.13(b)(1); *see also Arulnanthy v. Garland*, 17 F.4th 586, 595 (5th Cir. 2021).

[5] *Kumar v. Garland*, 52 F.4th 957, 970 (5th Cir. 2022) (quoting *Morales v. Sessions*, 860 F.3d 812, 816 (5th Cir. 2017)).

[6] *Morales*, 860 F.3d at 816 (internal quotation marks and citation omitted).

[7] *Abdel-Masieh v. I.N.S.*, 73 F.3d 579, 583 (5th Cir. 1996) (citation omitted).

[8] *Gjetani v. Barr*, 968 F.3d 393, 397 (5th Cir. 2020) (quoting *Majd v. Gonzales*, 446 F.3d 590, 595 (5th Cir. 2006)).

[9] *Id.*

decision."[10]  However, when the BIA affirms absent opinion, as is the case here, this court reviews the IJ's findings and conclusions.[11]

We review questions of law de novo and review factual findings for substantial evidence.[12]  "Substantial evidence supports a decision unless 'the evidence is so compelling that no reasonable fact finder could fail to find the petitioner statutorily eligible for relief.'"[13]  We generally also review the decision "procedurally to ensure that the complaining alien has received full and fair consideration of all circumstances that give rise to his or her claims."[14]  The BIA and IJ are not required to "address evidentiary minutiae or write any lengthy exegesis."[15]  However, the opinion must show "meaningful consideration of 'the relevant substantial evidence supporting the alien's claims.'"[16]  "In assessing whether the applicant 'received full and fair consideration,' this court looks to see 'merely that [the BIA] consider[ed] the issues raised, and announce[d] its decision in terms sufficient to enable a reviewing court to perceive that it has heard and thought

---

[10] *Efe v. Ashcroft*, 293 F.3d 899, 903 (5th Cir. 2002) (citing *Castillo-Rodriguez v. I.N.S.*, 929 F.2d 181, 183 (5th Cir. 1991)); *see also Sealed Petitioner v. Sealed Respondent*, 829 F.3d 379, 383 (5th Cir. 2016); *Wang v. Holder*, 569 F.3d 531, 536 (5th Cir. 2009) (citation omitted).

[11] *Efe*, 293 F.3d at 903.

[12] *See Ghotra v. Whitaker*, 912 F.3d 284, 287-88 (5th Cir. 2019).

[13] *Arulnanthy v. Garland*, 17 F.4th 586, 592 (5th Cir. 2021) (quoting *Mirza v. Garland*, 996 F.3d 747, 752 (5th Cir. 2021)).

[14] *Abdel-Masieh v. I.N.S.*, 73 F.3d 579, 585 (5th Cir. 1996) (internal quotation marks omitted) (quoting *Zamora-Garcia v. I.N.S.*, 737 F.2d 488, 490 (5th Cir. 1984) (unpublished)).

[15] *Kumar v. Garland*, 52 F.4th 957, 973 (5th Cir. 2022) (quoting *Abdel-Masieh*, 73 F.3d at 585).

[16] *Id*. (quoting *Abdel-Masieh*, 73 F.3d at 585).

and not merely reacted.'"[17]     A failure to show such consideration is considered an error.[18]

"Where an agency has failed to comply with its responsibilities, we should insist on its compliance rather than attempt to supplement its efforts."[19]   Therefore, "[i]f this court determines that the BIA applied an inappropriate standard or neglected necessary findings, the court will vacate the decision and remand to the BIA."[20]

Here, the IJ properly determined that Matei failed to show that he suffered past persecution, which meant Matei bore the burden of showing a well-founded fear of persecution.  However, the IJ failed to announce the decision regarding fear of persecution in sufficient terms for this court to "perceive that [the IJ] has heard and thought and not merely reacted."[21]

## A

The IJ found that Matei's experiences were not severe enough to amount to past persecution.  Matei argues that the IJ applied "too harsh a standard in conducting this prong of the asylum inquiry."  He argues that the harm he faced need not be physical and that persecution can be based on cumulative effect.   However, the IJ acknowledged that there is no "universally accepted definition" of persecution and that it could entail "physical punishment, infliction of harm, *or* significant deprivation of liberty."   Further, the IJ acknowledged that "[m]ultiple lesser harms

---

[17] *Ghotra v. Whitaker*, 912 F.3d 284, 290 (5th Cir. 2019) (quoting *Efe v. Ashcroft*, 293 F.3d 899, 908 (5th Cir. 2002)).

[18] *See Cabrera v. Sessions*, 890 F.3d 153, 162-63 (5th Cir. 2018).

[19] *Abdel-Masieh*, 73 F.3d at 585 (quoting *Sanon v. I.N.S.*, 52 F.3d 648, 652 (7th Cir. 1995)).

[20] *Ghotra*, 912 F.3d at 288 (citing *Iruegas-Valdez v. Yates*, 846 F.3d 806, 811, 813 (5th Cir. 2017)).

[21] *Id.* at 290 (quoting *Efe*, 293 F.3d at 908).

suffered in the aggregate may rise to the level of persecution." Although the IJ considered as part of her analysis that Matei did not show evidence of his physical harm, the IJ properly described the legal standard for persecution, considered Matei's testimony cumulatively, and found that the alleged incidents did not rise to the level of persecution. Contrary to Matei's contention, it does not appear that the IJ required a showing of physical harm.[22]

The name-calling in school, accusation of stealing food, three-month imprisonment for fighting, incident in which he was hit by police, and employment in agriculture and construction that Matei experienced while in Romania do not compel a conclusion that the harm he endured amounts to persecution.[23] The IJ was not required to infer that the three-month imprisonment was on account of Matei being Romani rather than because he, as he admits, fought in public.[24] Additionally, this court has found that physical harm does not necessarily compel a finding of past persecution.[25]

A claim of past persecution is weakened if the applicant "endured a threat or assault but . . . nevertheless chose[] to stay in his home country for

---

[22] *See Morales Lopez v. Garland*, 852 F. App'x 758, 769 (5th Cir. 2021) (unpublished) (stating that although IJ noted lack of physical harm, IJ did not require a showing of physical harm); *Ciupangel v. Att'y Gen. U.S.*, No. 20-2451, 2021 WL 3673192, at *1 (3d Cir. Aug. 19, 2021) (unpublished) (rejecting claim that IJ focused solely on physical harm when the IJ also considered other types of alleged harm and found harms did not rise to the level of persecution).

[23] *See Kumar v. Garland*, 52 F.4th 957, 970 (5th Cir. 2022) (applying the substantial evidence standard to a determination of whether conduct amounts to persecution).

[24] *See Jiannong Jiang v. Holder*, 400 F. App'x 859, 865 (5th Cir. 2010) (per curiam) (unpublished) ("Punishment for a criminal act cannot be considered persecution unless the punishment is 'excessive or arbitrary' and is motivated by a statutorily protected ground." (quoting *Abdel-Masieh v. I.N.S.*, 73 F.3d 579, 584 (5th Cir. 1996))); *Tesfamichael v. Gonzales*, 469 F.3d 109, 117 (5th Cir. 2006) (finding BIA was not required to draw inference that prosecution for illegal act was due to protected ground).

[25] *See, e.g.*, *Kumar*, 52 F.4th at 970 (stating two beatings and subsequent injuries by country's ruling political party do not compel a finding of past persecution).

a period of time."[26]  Matei was imprisoned for three months in 1994, and he went to the department of labor in 1998.  Although Matei alleges that these events, along with the other discrimination he faced as a student, constitute past persecution, he remained in Romania until he traveled to Italy in 2003. Further, he chose to return to Romania from Italy within three months because he believed conditions were better in Romania, and he then remained in Romania until 2012.  Additionally, when asked why he chose to leave Romania in 2012, Matei did not mention persecution, instead stating that he was afraid that his family was going to increase and he would not have the money to support them.  The years after the described incidents in which Matei remained in Romania, his choice to return to Romania from Italy, and his reasoning for moving to the United States all weaken his claim of past persecution.

Because Matei failed to prove past persecution, he bore the burden of establishing a well-founded fear of future persecution.[27]

**B**

The IJ found that Matei failed to prove that he had a well-founded fear of future persecution.  "To show a well-founded fear of persecution, an alien must have subjective fear of persecution, and that fear must be objectively reasonable."[28]  One way an applicant can show an objectively reasonable fear is "by proving that he belongs to a group of people against whom 'there is a

---

[26] *Gjetani v. Barr*, 968 F.3d 393, 399 (5th Cir. 2020) (citations omitted).

[27] *See Ghotra v. Whitaker*, 912 F.3d 284, 288 (5th Cir. 2019).

[28] *Arulnanthy v. Garland*, 17 F.4th 586, 595 (5th Cir. 2021) (quoting *Cabrera v. Sessions*, 890 F.3d 153, 159-60 (5th Cir. 2018)); *see also Matadi v. Barr*, 821 F. App'x 277, 285 (5th Cir. 2020) (per curiam) (unpublished) ("To demonstrate a well-founded fear of future persecution, a petitioner must establish that his fear is both 'subjectively genuine' and 'objectively reasonable.'").

pattern or practice of persecution.'"[29]  A pattern or practice of persecution must be "systemic, pervasive, or organized."[30]  The IJ found that Matei did not prove a pattern or practice of persecution.  However, Matei argues that there is evidence in the record that "compels a contrary conclusion."

To explain the finding that Matei failed to prove a pattern or practice of persecution against the Roma in Romania, the IJ cites evidence in the record that, although "there is societal discrimination against Roma," the government has taken steps "to integrate the Roma community" and "the Romanian government has taken steps to ameliorate the relationships with the Romani community by using Romani mediators to facilitate communication between Roma and authorities and to assist in crisis."

The IJ erroneously stated that this information is in the 2017 and 2018 country reports.  Only the 2011 country report discusses efforts by the Romanian government to improve conditions.  The 2017 report describes no such efforts, instead describing "police violence against the Roma community" as one of the "most significant human rights issues."  Further, the 2017 report states that "[d]iscrimination against Roma continued to be a major problem" and that "Romani groups complained that police harassment and brutality, including beatings, were routine."  It also discusses segregation along ethnic lines, forced evictions, and other discrimination faced by Roma.  None of this information from the 2017 report is included in the IJ's opinion, and the 2018 country report is not in the record.

The IJ stated, without elaboration, that Matei "has not presented evidence of a systematic, pervasive, or organized effort to kill, imprison, or severely injure the Roma group."  However, Matei did present evidence of

---

[29] *Aziz v. Mukasey*, 301 F. App'x 369, 371 (5th Cir. 2008) (per curiam) (unpublished) (quoting 8 C.F.R. § 1208.16(b)(2)); *see also Qorane v. Barr*, 919 F.3d 904, 910 (5th Cir. 2019).

[30] *Gjetani*, 968 F.3d at 398 (quoting *Wijono v. Gonzales*, 439 F.3d 868, 874 (8th Cir. 2006)).

No. 22-60144

frequent police brutality, as described in the 2017 report, and there is no indication of whether the IJ considered this evidence or considered if such brutality rises to the level of persecution. Although we do not require the IJ to "address evidentiary minutiae or write any lengthy exegesis,"[31] when the only evidence cited comes from an older country report, that evidence is improperly attributed to more recent country reports, and there is no indication that the IJ considered the treatment of Roma actually described in the more recent country reports, the IJ has not "announce[d] its decision in terms sufficient"[32] for this court to ensure Matei "received full and fair consideration."[33] The IJ's analysis "raises too great a concern that [she] did not adequately consider the evidence before [her]."[34] It is not sufficient that the IJ stated "all admitted evidence has been considered," especially in light of the lack of an opinion from the BIA.

Accordingly, we remand this case to the BIA for a decision on Matei's asylum eligibility that properly considers his objective fear of future

---

[31] *Kumar v. Garland*, 52 F.4th 957, 973 (5th Cir. 2022) (quoting *Abdel-Masieh v. I.N.S.*, 73 F.3d 579, 585 (5th Cir. 1996)).

[32] *Ghotra*, 912 F.3d at 290 (quoting *Efe v. Ashcroft*, 293 F.3d 899, 908 (5th Cir. 2002)).

[33] *Id.* (quoting *Abdel-Masieh*, 73 F.3d at 585); *see Emmanuel-Tata v. Garland*, No. 20-60487, 2022 WL 126982, at *3 (5th Cir. Jan. 12, 2022) (per curiam) (unpublished) (finding BIA's statement that the record did not contain relevant evidence, when the record did contain relevant evidence, weighed in favor of finding that the applicant "did not receive 'meaningful consideration of the relevant substantial evidence supporting' his claims." (citing *Abdel-Masieh*, 73 F.3d at 585)); *Adjonke v. Mukasey*, 255 F. App'x 914, 915 (5th Cir. 2007) (per curiam) (unpublished) (stating court was "not convinced that [applicant] received full and fair consideration of the circumstances giving rise to his claims" when the IJ noted improvements in 2004 but did not discuss evidence of deterioration in 2005); *cf. Ndifon v. Garland*, 49 F.4th 986, 990 (5th Cir. 2022) (finding statement that applicant "points to no other objective evidence to support his . . . claim," when applicant did present other evidence, to weigh in favor of concluding BIA did not adequately consider the evidence supporting CAT claim).

[34] *Ndifon*, 49 F.4th at 990 (citing *Emmanuel-Tata*, 2022 WL 126982, at *3); *see also Adjonke*, 255 F. App'x at 915.

persecution.[35]  The IJ appears not to have determined whether Matei has a subjective fear of persecution.  Such a determination should also be made on remand if the BIA determines that Matei has shown objective fear.

## III

Finally, we turn to the denial of withholding of removal.  "To qualify for withholding of removal, an alien 'must demonstrate a clear probability of persecution upon return.'"[36]  The IJ stated that because Matei "failed to satisfy the lower standard for asylum...[h]e cannot meet the more demanding standard for withholding of removal."  However, as described above, we are not convinced that Matei received full and fair consideration of the circumstances giving rise to his claims of persecution upon return.  Thus, on remand, the BIA should determine whether the requirements for withholding of removal have been satisfied.

*    *    *

We GRANT the petition for review, VACATE the order of removal, and REMAND for further proceedings consistent with this opinion.

---

[35] *See Jalloh v. Barr*, 794 F. App'x 418, 421 (5th Cir. 2019) (per curiam) (unpublished).

[36] *Munoz-Granados v. Barr*, 958 F.3d 402, 408 (5th Cir. 2020) (quoting *Roy v. Ashcroft*, 389 F.3d 132, 138 (5th Cir. 2004)).