# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

March 26, 2019

Lyle W. Cayce
Clerk

No. 17-60394

———————

ABDIFATAH GAAS QORANE, also known as Qorane Abdifatah Gaas,

       Petitioner,

v.

WILLIAM P. BARR, U.S. Attorney General,

       Respondent.

———————

Petitions for Review of an Order of the
Board of Immigration Appeals

———————

Before CLEMENT, GRAVES, and OLDHAM, Circuit Judges.

ANDREW S. OLDHAM, Circuit Judge:

The federal government denied Abdifatah Gaas Qorane various forms of immigration relief after concluding he would not be persecuted or tortured in his home country of Somalia. Despite Qorane's requests, the government chose not to revisit that conclusion. He filed a petition for review asking us to revisit it instead. We deny the petition.

I.

On January 14, 2016, Qorane attempted to enter the United States at Brownsville, Texas. The Department of Homeland Security ("DHS") commenced removal proceedings because Qorane did not have valid entry documents. Before an Immigration Judge ("IJ"), Qorane conceded removability. But he applied for asylum, withholding of removal, and

protection under the Convention Against Torture ("CAT"). He argued he would suffer persecution in Somalia because he belonged to a minority clan, the Ashraf.

Qorane testified before the IJ that he was born in Mogadishu in 1988, but his family moved to Qoryoley in 1991. There he later developed a water delivery business. Not every customer paid. When a customer didn't pay, Qorane would simply cease delivering to his home. One day, a delinquent customer—and member of the dominant Ayr clan—ordered Qorane to continue selling him water. The delinquent customer told Qorane "[i]t's in your own interests," and "[y]ou know who I am and what I own." When Qorane refused, the customer pulled Qorane from his donkey cart, causing him to bump his hip on a rock. The man then threatened Qorane, saying "if you don't listen to my orders, I will kill you," and "you will never survive in this city because you are a minority person." Qorane's mother confronted the customer, but he insisted Qorane "has to take my orders."

"[N]othing else" happened after this incident, and neither Qorane nor his mother reported it to the police. Qorane did not seek medical attention for his hip. Qorane also testified that on prior occasions Ayr customers verbally abused and slapped him. And he said Ayr members of the local militia previously threatened to jail him if he did not pay taxes.

In January 2011, a few weeks after being pulled from his donkey cart, Qorane moved to Uganda. He lived there for four years. During that time, he found a job and got engaged; his fiancée currently lives in Somalia. Then he moved to Angola, where he lived for a little over six months. By his own admission, Qorane made the decision to come to the United States only in late 2015—and apparently after being repeatedly arrested in Angola. He paid a smuggler $3,000 to fly him to Brazil and then to bring him to the United States border.

No. 17-60394

Based on this testimony, the IJ denied Qorane's application, and the Board of Immigration Appeals ("BIA") affirmed. Qorane filed a petition for review, followed by a flurry of other motions. First, Qorane moved the BIA to reopen the removal proceedings, but it refused. He filed a second petition for review and moved for a stay of removal. This Court, Circuit Justice Alito, and the Supreme Court all denied a stay. *See Qorane v. Sessions*, No. 17A980 (Apr. 16, 2018). Qorane then moved the BIA to reconsider its denial of his motion to reopen, but it refused. Again Qorane filed a petition for review (his third). Again he moved for a stay. And again this Court, Circuit Justice Alito, and the Supreme Court all denied the stay. *See Qorane v. Sessions*, No. 17A1425 (Aug. 6, 2018). On September 11, 2018, DHS removed Qorane to Somalia. *See Gaas v. Joyce*, No. 3:18-cv-118, ECF No. 49 (W.D. Tex. Sept. 17, 2018).

## II.

Qorane argues the BIA erred in its initial decision by denying him asylum, withholding of removal, and relief under the CAT. To be eligible for the discretionary relief of asylum, Qorane must prove "specific facts sufficient to demonstrate that [he] is a refugee." 8 U.S.C. § 1158(b)(1)(B)(ii). That means showing he was previously persecuted, or has a well-founded fear of future persecution, "on account of . . . membership in a particular social group." *Id.* § 1101(a)(42)(A). To obtain the mandatory relief of withholding of removal, Qorane bears a heavier burden—showing "a clear probability" his "life or freedom would be threatened" in Somalia because of his membership in a particular social group. *Id.* § 1231(b)(3)(A), (b)(3)(C); *INS v. Stevic*, 467 U.S. 407, 413 (1984); *see* 8 C.F.R. § 1208.16. Finally, to obtain relief under the CAT, Qorane's burden is heavier still. He needs to prove it is "more likely than not" he will be tortured in Somalia. 8 C.F.R. § 208.16(c)(2); *see* 8 U.S.C. § 1231 note (United States Policy With Respect to Involuntary Return of Persons in Danger of Subjection to Torture).

No. 17-60394

The BIA denied all three forms of relief.  We review its decision[1] for substantial evidence and reverse only if the evidence is "so compelling that no reasonable fact finder could fail to find the petitioner statutorily eligible for relief." *Roy v. Ashcroft*, 389 F.3d 132, 138 (5th Cir. 2004) (per curiam) (quotation omitted).  Under this standard, all three of Qorane's arguments—regarding past persecution, future persecution, and torture—fail.

A.

The BIA denied asylum (and therefore withholding) because Qorane failed to establish his *previous* mistreatment rose to the level of persecution.  The record does not compel a different conclusion.  Persecution "is an extreme concept that does not include every sort of treatment our society regards as offensive." *Arif v. Mukasey*, 509 F.3d 677, 680 (5th Cir. 2007) (per curiam) (quotation omitted).  Slapping and harassment by majority clan members do not suffice.  Nor do mere threats of incarceration. *See Mikhael v. INS*, 115 F.3d 299, 304 (5th Cir. 1997) (affirming BIA order finding actual detention and beating for three hours was not persecution).  It is not even clear these incidents were caused by his clan status or his water-delivery job.

That leaves a *single* incident over Qorane's twenty-three years in Somalia—the interaction with the delinquent customer.  The shove from the donkey cart and consequent injury to Qorane's hip don't suffice. *See Eduard v. Ashcroft*, 379 F.3d 182, 187–88 (5th Cir. 2004) (being struck on the head with a rock does not qualify as persecution).  Qorane didn't even think the injury was serious enough to seek medical attention.

---

[1] In some instances, Qorane complains about what the *IJ* did.  But we have authority to review only the *BIA's* decision because only that decision constitutes final agency action. *Castillo-Rodriguez v. INS*, 929 F.2d 181, 183 (5th Cir. 1991).  When the BIA incorporates an IJ's reasoning by reference, the IJ's reasoning is relevant only because it explains the BIA's decision. *See, e.g., Chun v. INS*, 40 F.3d 76, 78 (5th Cir. 1994) (per curiam).  Here, the BIA issued its own decision, so that is what we review.

No. 17-60394

So he focuses on the customer's threat to kill him.  Qorane relies on one out-of-circuit case holding "[a] credible death threat by a person who has the immediate ability to act on it constitutes persecution." *Diallo v. U.S. Attorney Gen.*, 596 F.3d 1329, 1333–34 (11th Cir. 2010) (per curiam).  But the threat there—that Diallo "would be executed the following day"—was *credible* because Diallo was "threatened with death by the same soldiers who had already killed his brother." *Id.* at 1331, 1333.  And Qorane's own testimony distinguishes his case from *Diallo*.  He admitted "it didn't get to the point that somebody point[ed a] gun at me and said I'm going to kill you."

We have previously treated death threats as a question of future—not past—persecution.  *See Bernal-Garcia v. INS*, 852 F.2d 144, 146–47 (5th Cir. 1988).  But even assuming threats can constitute past persecution, threats that are "exaggerated, non-specific, or lacking in immediacy" should not suffice. *Corado v. Ashcroft*, 384 F.3d 945, 947 (8th Cir. 2004) (per curiam).  That's all we have here.  In the short time Qorane was in Somalia after the incident, he had no further conflict with the customer—not even after his mother intervened.  And in the context of a business dispute over water delivery, the threat looks even less like a statement of concrete plans to murder Qorane.

B.

The BIA also denied asylum (and therefore withholding) because Qorane failed to prove he had a well-founded fear of *future* persecution.[2]  Qorane could

---

[2] Qorane insists the Supreme Court established a 10% test for demonstrating such a fear in asylum cases when it stated an alien may qualify if there is "a 10% chance of being shot, tortured, or otherwise persecuted." *INS v. Cardoza-Fonseca*, 480 U.S. 421, 440 (1987). The statutory test is whether an alien has a "well-founded fear" of persecution.  8 U.S.C. § 1101(a)(42)(A).  *Cardoza-Fonseca* simply tells us we may gauge the well-foundedness by looking to the likelihood an alien will suffer harm.  And that likelihood need not be "more likely than not" (as in the withholding and CAT contexts); a "reasonable possibility" suffices. 480 U.S. at 431, 440.  We doubt the Court was attempting to quantify the precise level of risk (and the precise degree of severity) necessary to demonstrate what is reasonably possible in

5

No. 17-60394

establish that fear in two ways—by showing others would target him for persecution or by showing a pattern or practice of targeting people like him. *Zhao v. Gonzales*, 404 F.3d 295, 307 (5th Cir. 2005).  He did neither.

First, he rehashes the death threat to suggest he will be targeted.  But he offered no evidence to the BIA suggesting the customer—or any other Ayr clan member for that matter—sought him out to make good on the threat in the years since he left the country.  That's the type of evidence we have required for a similar claim before.  *See Abdel-Masieh v. INS*, 73 F.3d 579, 584–85 (5th Cir. 1996).

Second, he argues the 2015 State Department Country Report DHS filed at his hearing shows a pattern or practice of majority clans persecuting the Ashraf.  The Report states majority clans frequently attack and harass minority clans.  But in a long list of persecuted minority clans, the Report omits any reference to the Ashraf.  Qorane also points to a two-page excerpt from an article that does briefly reference the Ashraf.  But it's not clear when Qorane first provided the article to the BIA.  The agency never discussed it, perhaps because it's not properly in the record.  In any case, it hardly establishes a present-day pattern or practice of persecution.  It says the Ashraf became "targets for human rights abuses" after "the civil conflicts of the 1990s," but that they since "have achieved political influence and success."

## C.

Finally, the BIA denied CAT relief because Qorane failed to prove it was more likely than not government actors would torture him in Somalia.  Qorane presents only general evidence about conditions there.  Generalized country evidence tells us little about the likelihood state actors will torture any

---

every case.  But the important dant thing is Qorane has not met even *Cardoza-Fonseca*'s standard. The difficulty of gauging the likelihood of some type of violence makes it all the wiser to respect the BIA's factual determinations on substantial-evidence review.

particular person, including Qorane. *Chen v. Gonzales*, 470 F.3d 1131, 1140–41 (5th Cir. 2006). And the incidents specific to him discussed above do not even rise to the level of persecution. It follows *a fortiori* they do not constitute torture. *See Efe v. Ashcroft*, 293 F.3d 899, 907 (5th Cir. 2002) (The "CAT does not require persecution, but the higher bar of torture.").

Even if that weren't true, Qorane has an independent problem. Torture includes only "pain or suffering . . . inflicted by or . . . with the consent or acquiescence of a public official or other person acting in an official capacity." 8 C.F.R. § 208.18(a)(1); *see Negusie v. Holder*, 555 U.S. 511, 536 n.6 (2009) (Stevens, J., concurring in part and dissenting in part). Qorane says Ayr clan members qualify as such "public official[s]" because the Ayr militia was the only authority (and hence the *de facto* government) at the time of the donkey incident. He cites no case cloaking private actors in government garb under such circumstances. To the contrary, a power vacuum does not make private conduct public because warring clans do not exercise "official power." *D-Muhumed v. U.S. Attorney Gen.*, 388 F.3d 814, 820 (11th Cir. 2004).

In any case, Qorane offered no evidence supporting his bald assertion there "was not really a government at the time." Nor did he offer evidence public officials would become "aware[]" of, and then "acquiesce[]" in, Ayr members' violence. 8 C.F.R. § 208.18(a)(7); *see Iruegas-Valdez v. Yates*, 846 F.3d 806, 812 (5th Cir. 2017). He suggests the Somali government may be unable to protect him. But a government's inability to protect its citizens does not amount to acquiescence. *See Zaldana Menijar v. Lynch*, 812 F.3d 491, 501–02 (6th Cir. 2015).

## III.

Qorane also argues the BIA abused its discretion by denying his motion to reopen his removal proceedings. Again, no.

No. 17-60394

The Immigration and Nationality Act carefully limits an alien's ability to bring motions to reopen. Generally, an alien may file only one motion to reopen and must do so "within 90 days of the date of entry of a final administrative order of removal." 8 U.S.C. § 1229a(c)(7)(A), (c)(7)(C)(i); *accord* 8 C.F.R. § 1003.2(c)(2). Qorane's motion to reopen was late.

There are two potential exceptions. First, the BIA may "reopen or reconsider on its own motion any case in which it has rendered a decision" at any time. 8 C.F.R. § 1003.2(a). An IJ may do the same thing. *Id.* § 1003.23(b)(1). To justify exercising this "*sua sponte*" authority to reopen, the BIA generally requires an alien to point to exceptional circumstances. *In re J-J-*, 21 I. & N. Dec. 976, 984–85 (B.I.A. 1997); *see Chehazeh v. Attorney Gen.*, 666 F.3d 118, 128–29 (3d Cir. 2012). Second, the time and number limitations do not apply to motions to reopen to seek asylum or withholding "based on [evidence of] changed country conditions" if that evidence "is material and was not available and would not have been discovered or presented at the previous proceeding." 8 U.S.C. § 1229a(c)(7)(C)(ii); 8 C.F.R. § 1003.2(c)(3)(ii). As explained below, neither exception helps Qorane.

A.

The BIA refused to reopen the proceedings *sua sponte*. We lack jurisdiction to review that decision. *See Enriquez-Alvarado v. Ashcroft*, 371 F.3d 246, 249–50 (5th Cir. 2004). Because the federal regulations governing *sua sponte* authority provide "no meaningful standard against which to judge the agency's exercise of discretion," *Heckler v. Chaney*, 470 U.S. 821, 830 (1985), the decision to refrain from exercising that authority is "committed to agency discretion by law," 5 U.S.C. § 701(a)(2); *see Tamenut v. Mukasey*, 521 F.3d 1000, 1004 (8th Cir. 2008) (en banc) (per curiam) (noting ten circuits agree). We cannot entertain Qorane's complaint insofar as he believes the BIA should have reopened on this basis.

No. 17-60394

B.

But we can review the BIA's decision not to reopen based on changed country conditions. *Mata v. Lynch*, 135 S. Ct. 2150, 2154–55 (2015). We review that decision through a "highly deferential abuse-of-discretion" lens. *Zhao*, 404 F.3d at 303. We may not grant the petition—even if the BIA erred in denying reopening—unless the BIA's decision was "capricious, racially invidious, utterly without foundation in the evidence, or otherwise so irrational that it is arbitrary." *Id.* at 304 (quotation omitted).

First, Qorane argues the BIA applied the wrong legal standard to his motion to reopen. The BIA required him to "demonstrat[e] that the new evidence offered would likely change the result in the case." But we previously have used the exact same standard (albeit in unpublished opinions) when considering BIA denials of motions to reopen. *See, e.g.*, *Htwe v. Holder*, 355 F. App'x 812, 815 (5th Cir. 2009) (per curiam); *Jasani v. Reno*, 248 F.3d 1138 (5th Cir. 2001) (per curiam) (unpublished table decision). Today we reiterate that standard: An alien seeking to reopen must show the "evidence [of changed country conditions] is material." 8 U.S.C. § 1229a(c)(7)(C)(ii). That means the evidence must be likely to change the result of the alien's underlying claim for relief.

We're in good company. Our sister circuits routinely require the same thing. The First Circuit, for example, says "[e]vidence is not material unless it has some impact on the outcome of a petitioner's underlying case." *Perez v. Holder*, 740 F.3d 57, 62 (1st Cir. 2014); *see also Hernandez-Perez v. Whitaker*, 911 F.3d 305, 321 (6th Cir. 2018); *Mendoza-Ordonez v. Attorney Gen.*, 869 F.3d 164, 169 (3d Cir. 2017); *Wanrong Lin v. Holder*, 771 F.3d 177, 182–83 (4th Cir. 2014); *Maatougi v. Holder*, 738 F.3d 1230, 1240 (10th Cir. 2013); *Jiang v. U.S. Attorney Gen.*, 568 F.3d 1252, 1256–57 (11th Cir. 2009); *Vargas v. Holder*, 567

No. 17-60394

F.3d 387, 391 (8th Cir. 2009); *Young Sun Shin v. Mukasey*, 547 F.3d 1019, 1025 (9th Cir. 2008).  Therefore, the BIA applied the correct legal standard.

Second, Qorane argues conditions have materially changed for the Ashraf in Somalia because of the rise of the jihadist terrorist group, al-Shabaab.  He relies principally on an affidavit he solicited from a PhD student at George Mason University.  It details how al-Shabaab sometimes targets the Ashraf (but not on account of their clan status) and recently detonated a massive car bomb (but targeting no one in particular).  The BIA properly concluded this was evidence of much of the same ongoing "civil strife" in Somalia that Qorane had shown originally.  *Hallman v. INS*, 879 F.2d 1244, 1247 (5th Cir. 1989) (per curiam).

## IV.

Last of all, Qorane argues the BIA abused its discretion by denying his motion to reconsider its decision denying his motion to reopen.  To prevail, Qorane needed to "identify a change in the law, a misapplication of the law, or an aspect of the case that the BIA overlooked."  *Zhao*, 404 F.3d at 301.  He arguably did one of those things.  Qorane complained—then and now—the BIA overlooked his CAT claim in its decision denying his motion to reopen.  But the BIA duly corrected that oversight in response to his motion to reconsider: "While our order mistakenly neglected to specifically mention this claim, the respondent's failure to establish material changed conditions requires us to deny this aspect of his claim as well."  Exactly right.  Qorane did not point to new facts suggesting his fear of persecution was more realistic than it had been a year before.  He certainly did not point to new facts suggesting the Somali government would single him out for torture.

*     *     *

The petition for review is DENIED.

10