# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
May 1, 2024

Lyle W. Cayce
Clerk

No. 23-60089

_____

Sonia Guadalupe Loredo Rangel;
Luisa Fernanda Lopez Loredo; Mary Jose Lopez Loredo,

*Petitioners*,

*versus*

Merrick Garland, *U.S. Attorney General*,

*Respondent.*

_____

Petition for Review of an Order of
the Board of Immigration Appeals
Agency Nos. A202 132 712,
A202 132 713, A202 132 714

_____

Before Higginbotham, Smith, and Higginson, *Circuit Judges.*

Jerry E. Smith, *Circuit Judge*:

Sonia Rangel and her two minor children, Luisa and Mary Loredo (collectively "petitioners"), petition for review of an order of the Board of Immigration Appeals ("BIA") denying their application for asylum relief, withholding of removal, and relief under the Convention Against Torture ("CAT"). Finding no error, we deny the petition for review.

## I.

Petitioners are citizens of Mexico who illegally entered the United

No. 23-60089

States without valid documentation.[1] Nonetheless, petitioners—submitting applications for (1) asylum relief, (2) withholding of removal, and (3) CAT relief—contend they should be protected from removal. Their applications rest on the theory that the Mexican Navy will persecute and torture them to dissuade Rangel from further pursuing her "ongoing campaign to hold the Mexican military responsible for the disappearance of her son."

In October 2015, petitioners appeared with counsel before an immigration judge ("I.J.") for a hearing on the merits of their applications. In support of those applications, petitioners testified before the I.J., submitted numerous letters and declarations, and proffered expert testimony on Mexican legal culture.

After considering petitioners' evidence, the I.J. determined that they had not met their burden to receive relief. Specifically, the I.J. determined that petitioners had failed to establish that they suffered past persecution or that they held a well-founded fear of future persecution. The I.J. also determined that petitioners were not eligible for CAT relief because they failed to satisfy their burden of establishing the requisite likelihood of future torture. Accordingly, the I.J. denied the applications for relief. Petitioners appealed to the BIA, which affirmed.

## II.

"We review the BIA's factual findings under the substantial evidence standard and its legal conclusions *de novo*. Where the I.J.'s decision impacted the BIA—as is the case here—we consider the I.J.'s decision to the extent it influenced the BIA." *Mejia-Alvarenga v. Garland*, 95 F.4th 319, 323 (5th Cir.

---

[1] In January 2015, petitioners appeared before an immigration judge and conceded the Department of Homeland Security's charges of inadmissibility. That proceeding is not part of this appeal.

2024) (cleaned up).  The BIA's determination may not be disturbed unless the evidence "*compels*" a contrary conclusion.  *Zhao v. Gonzales*, 404 F.3d 295, 306 (5th Cir. 2005) (internal quotation marks and citation omitted); *see also* 8 U.S.C. § 1252(b)(4)(B).

## III.

"To qualify for asylum, an applicant must show [s]he is a refugee by proving [s]he suffered past persecution or has a well-founded fear of future persecution."  *Dayo v. Holder*, 687 F.3d 653, 657 (5th Cir. 2012) (citing 8 U.S.C. § 1101(a)(42)).

### A.   *Past Persecution*

#### 1. *Legal Standard*

"Past persecution entails harm inflicted on the alien on account of a statutorily enumerated ground by the government or forces that a government is unable or unwilling to control."  *Tesfamichael v. Gonzales*, 469 F.3d 109, 113 (5th Cir. 2006) (citing 8 C.F.R. § 1208.13(b)(1)).

Rangel complains that the I.J. applied the wrong legal standard in determining whether she had established past persecution.[2]  She asserts that the I.J. erred by subjecting her claim "to a more demanding standard . . . [of] proving 'extreme treatment'" because the I.J. found that "neither Rangel nor her daughters suffered physical harm."

Rangel is mistaken.  Extreme treatment is not a more demanding standard—it is *the* standard for establishing past persecution for purposes of demonstrating asylum eligibility.[3]  Persecution *always* requires an "extreme"

_____

[2] Luisa and Mary are derivative beneficiaries of Rangel's application for asylum. *See* 8 U.S.C. § 1158(b)(3)(A).

[3] *See Majd v. Gonzales*, 446 F.3d 590, 595 (5th Cir. 2006); *see also id.* (observing that

level of conduct—no matter if the alleged mistreatment is physical or not. *Qorane v. Barr*, 919 F.3d 904, 909–10 (5th Cir. 2019).[4] The standard does not change when it comes to establishing persecution without a showing of physical harm. Thus, the I.J. applied the correct legal standard.

### 2. Evidence

Rangel claims that the record evidence compels a finding of past persecution. She relies on two incidents: First, when the Mexican Navy "searched, ransacked, and robbed" her then-vacant home. Second, when the Navy drove by her house to look for her and her daughters later that day.

Citing *Tamara-Gomez v. Gonzalez*, 447 F.3d 343 (5th Cir. 2006), Rangel claims those two incidents amount to non-physical persecution. In *Tamara-Gomez*, we held that threats of violence against an alien and his family—coupled with evidence of violent threats' being carried out against other similarly-situated aliens—compelled a finding of past persecution. *Id.* at 348–49. Rangel claims the harm she suffered is analogous to that in *Tamara-Gomez* because (1) the incidents deprived her of her belongings and home, *see id.*, and (2) she perceived the ransacking as a "imminent and menacing threat" intended to dissuade her from campaigning against the Navy, *see infra* note 7.

The government counters with three contentions: (1) As to the incidents themselves, they were not sufficiently severe to meet the "extreme conduct" threshold for past persecution. Then, as to the alleged threat flow-

---

persecution "does not encompass all treatment that our society regards as unfair, unjust, or even unlawful or unconstitutional" (internal quotation marks and citation omitted)). Indeed, even "brutal physical attacks" might not establish persecution. *Gjetani v. Barr*, 968 F.3d 393, 398 (5th Cir. 2020).

[4] *See Argueta-Hernandez v. Garland*, 87 F.4th 698, 707 (5th Cir. 2023) (providing a non-exhaustive list of non-physical harms that may rise to the level of past persecution).

ing from the ransacking, (2) the evidence fails to establish sufficiently that the incident was intended as a threat against Rangel and her daughters, and (3) even if it was, it did not rise to the level of persecution, for it was "non-specific" and "lacked immediacy." *Munoz-Granados v. Barr*, 958 F.3d 402, 407 (5th Cir. 2020) (cleaned up).

We do not minimize the harms that Rangel has asserted. Nonetheless, there remains substantial evidence supporting the BIA's conclusion that her alleged harms do not amount to past persecution.

*First*, the record evidence does not compel the conclusion that the ransacking was sufficiently severe to rise to the level of persecution.

Aliens can establish past persecution through non-physical harms. *See Argueta-Hernandez*, 87 F.4th at 707. Indeed, mistreatment can take "other forms—such as the deliberate imposition of severe economic disadvantage or the deprivation of liberty, food, housing, employment, or other essentials of life." *Id.* (quoting *Abdel-Masieh v. INS*, 73 F.3d 579, 583 (5th Cir. 1996)) (cleaned up).

That said, the alleged mistreatment—irrespective of form—must still be sufficiently severe to constitute "extreme conduct." *See supra* part III.A.1. The myriad ways harm may arise does not affect the requisite showing of severity for a finding of past persecution. Merely alleging a harm such as the deprivation of housing does not automatically constitute persecution. Rather, it remains the alien's burden to show that the economic deprivation was *extreme*—i.e., "so severe that [it] constitute[s] a threat to life or freedom."[5]

---

[5] *Argueta-Hernandez*, 87 F.4th at 707 (quoting *Morales v. Sessions*, 860 F.3d 812, 816 (5th Cir. 2017)); *see also supra* part III.A.1.

No. 23-60089

Rangel alleges that the first incident—that is, the ransacking—damaged her home and her personal effects. As to the scope and extent of the damage, she relies on the observations of her neighbor, who told her that her television, speakers, other "things that belonged to her, and practically everything" had been taken. Also relayed was that the door to her house had been left open.

True, society would likely regard the conduct alleged in the first incident as "unfair, unjust, or even unlawful or unconstitutional." *Majd*, 446 F.3d at 595 (internal citation and quotation marks omitted). And, given Rangel's positive credibility determination, we have no reason to doubt the sincerity of her account. But persecution requires more. *Id.* We "have condemned all manner of egregious and even violent behavior while concluding they do not amount to persecution." *Gjetani*, 968 F.3d at 398 (collecting cases).

Even taken at face value, the damage Rangel describes does not compel a finding of persecution. Indeed, our sister circuits have so held when faced with ransackings of similar—or even greater—severity.[6] Take, for

---

[6] *See Munoz-Granados*, 958 F.3d at 405, 407 (affirming BIA determination where persecutors destroyed alien's father's merchandise and had threatened to kill alien in the past); *see also, e.g.*, *Evelyne v. Keisler*, No. 06-2314, 2007 WL 2914538, at *3 (1st Cir. Oct. 5, 2007) (per curiam) (unpublished) (noting that "the ransacking and defacing of [the alien's] house was not serious enough to rise above unpleasantness, harassment, or basic suffering" (cleaned up)); *Zho v. Gonzales*, 156 F. App'x 354, 355 (2d Cir. 2005) (unpublished) (concluding ransacking of mother's home "would not amount to persecution"); *Maraziegos-Morales v. Garland*, Nos. 20-3777/4171, 2021 WL 3140322, at *1–3 (6th Cir. July 26, 2021) (unpublished) (holding alien was not persecuted where she alleged, *inter alia*, that persecutors ransacked her church); *Escobar-Chavez v. I.N.S.*, No. 95-70076, 91 F.3d 151 (9th Cir. 1996) (table) (unpublished) (noting alien was not persecuted even though "his home was ransacked"); *Villavicencio-Castillo v. I.N.S.*, No. 94-70708, 97 F.3d 1463 (9th Cir. 1996) (table) (unpublished) (explaining that the "alleged conduct does not satisfy the standard for a showing of persecution" where "police ransacked [the alien's] parents' home and asked where she was").

example, *Liu v. Ashcroft*, 380 F.3d 307 (7th Cir. 2004), which dealt with an alien who alleged, *inter alia*, that the police "searched and ransacked" the apartment in which she and her family lived. *Id.* at 310. According to her, the police expressly stated that they ransacked the apartment as "a lesson" for "affiliati[ng] with Falun Gong." *Id.* On review, the *Liu* court affirmed the BIA's determination that the alien had not suffered persecution. *Id.* at 314. The Seventh Circuit so concluded after noting that the ransacking "was a singular event and [that] it [wa]s unclear if the officials caused any serious, permanent damage to her home," thereby making the incident "more akin to abusive or harassing treatment than persecution." *Id.* at 313.

We do the same. Like the alien in *Liu*, Rangel only alleges that her home was ransacked once. *Id.* Thus, the ransacking does not "ha[ve] the quality of a *sustained*, systematic effort to target an individual on the basis of a protected ground." *Gjetani*, 968 F.3d at 397 (citation omitted). Furthermore, Rangel has not shown that the ransacking caused serious or permanent damage to her home. Instead, she only alleges that the front door to her house was left open as a result of the incident. So, as was the case in *Liu*, the BIA could have found that the ransacking was more akin to "abusive or harassing treatment" than extreme conduct. 380 F.3d at 313.

Consequently, the BIA did not err in concluding that the ransacking was not sufficiently extreme to constitute persecution.

*Second*, the evidence does not compel a finding that the incidents created a threat that was so imminent and so menacing as to amount to persecution. Threats may constitute past persecution if they have imposed sufficiently extreme harms on the alien.[7] Not so for those that are "exagger-

---

[7] *See, e.g.*, *Tamara-Gomez*, 447 F.3d at 346 (incurring harm in the form of "mov[ing] his family to another house," "remov[ing] his sons from school," and

ated, non-specific, or lacking in immediacy." *Qorane*, 919 F.3d at 910 (cleaned up).

Rangel perceives the incidents as creating a threat to "the life and freedom of [her] and her daughters." The BIA disagreed and concluded that she "[did] not present[] evidence that th[e] threat was sufficiently menacing or imminent to rise to the level of persecution." That conclusion is not error.

The BIA permissibly determined that the threat was not sufficiently menacing or imminent. In the four months leading up to the ransacking, Rangel had publicly spoken out against the Navy on numerous occasions—appearing on news media and meeting with various Mexican and U.S. officials—without suffering any physical harm. Indeed, the Navy *never* directly threatened her or her daughters during that period. Absent "evidence of regular and methodological targeting," the BIA was allowed to find that the threat did not amount to persecution.[8]

Pushing back, Rangel contends that *Tamara-Gomez* compels a finding of past persecution. Not so. In *Tamara-Gomez*, FARC terrorists expressly threatened retaliation against an alien who accompanied the police on a mis-

---

"sen[ding] his wife and children to Miami."); *Alvarado-Molina v. I.N.S.*, 33 F. App'x 703 (5th Cir. Feb. 25, 2002) (per curiam) (table) (unpublished) (holding threats "d[id] not rise to the level of past persecution" where the alien "failed to show that the threats were of such a menacing and immediate nature that they *caused actual significant harm*" (emphasis added)).

[8] *Gjetani*, 968 F.3d 398–99; *see also id.* (concluding that three death threats "did not necessarily reflect the kind of pattern of sustained pursuit that persecution requires"); *Qorane*, 919 F.3d at 910 (holding a death threat did not amount to past persecution because the alien "had no further conflicts" with his persecutor "after the incident" in which the threat was issued); *Guillen Cedio v. Garland*, No. 20-60013, 2021 WL 6119989, at *4 (5th Cir. Dec. 27, 2021) (per curiam) (unpublished) ("[W]here the death threats reflect sporadic incidents, rather than methodical targeting, we have declined to overturn the BIA's decision even if those threats were paired with physical attacks.").

sion to recover the bodies of slain officers. 447 F.3d at 345, 348. Shortly after that, the alien and his family received countless threatening calls from the terrorists "specifically mentioning the . . . mission." *Id.* at 346. The alien's wife also "received demands for money, death threats to her husband, and threats to kidnap her two sons and train them to fight for FARC." *Id.* Further, when the family relocated, the terrorists followed—spray-painting their new home with the group's distinctive symbols and language.[9] *Id.* at 348. And to top it all off, FARC "tracked down and murdered" other members of the recovery mission and their family members. *Id.* at 346.

Though we are sympathetic to Rangel's fears, the threat she alleges nonetheless falls far short of the "organized, relentless campaign of intimidation, extortion, and murder" exemplified by the threats in *Tamara-Gomez*. *Gjetani*, 968 F.3d at 398. As already explained, there is no evidence —either before or after the incidents—suggesting that the Mexican Navy expressly threatened Rangel or her daughters. *Tamara-Gomez* is inapposite.

Therefore the BIA did not err in concluding that Rangel failed to establish past persecution.

## B.    *Well-Founded Fear of Future Persecution*

### 1. Legal Standard

An alien shows a well-founded fear of future persecution by establishing that "a reasonable person in her circumstances would fear persecution if she were to be returned to her native country." *Guevara Flores v. INS*, 786 F.2d 1242, 1249 (5th Cir. 1986). To establish a well-founded fear of persecution, "an alien must have a subjective fear of persecution, and that fear must be objectively reasonable." *Eduard v. Ashcroft*, 379 F.3d 182, 189 (5th

---

[9] Specifically, "the words 'Sapa Regaldo' (which translated means 'Two-Bit Snitch') and the letters 'FARC.'" *Tamara-Gomez*, 447 F.3d at 346.

Cir. 2004) (internal quotation marks and citation omitted).

An alien can establish a subjective fear of future persecution "in two ways—by showing others would target her for persecution or by showing a pattern or practice of targeting people like her." *Qorane*, 919 F.3d at 910 (cleaned up).

Then, to prove that a subjective fear is objectively reasonable, an alien must show that

> (1) she possesses a belief or characteristic a persecutor seeks to overcome by means of punishment of some sort; (2) the persecutor is already aware, or could become aware, that the alien possesses that belief or characteristic; (3) the persecutor has the capability of punishing the alien; and (4) the persecutor has the inclination to punish the alien.

*Cabrera v. Sessions*, 890 F.3d 153, 160 (5th Cir. 2018) (cleaned up) (quoting *Eduard*, 379 F.3d at 191).

Rangel contends the BIA's determination is legal error in two ways:

*First*, she claims that the BIA should not have "considered the absence of past persecution as evidence that [she] did not have an objectively reasonable fear of future persecution." In support of that claim, Rangel cites *Cabrera*, where, *inter alia*, we quoted *Zhao* for the proposition that it was not necessary "to prove that [an alien] had been personally targeted, because such an interpretation would render the future persecution inquiry redundant of the past persecution analysis." *Cabrera*, 890 F.3d at 159 (quoting *Zhao*, 404 F.3d at 308).

True, Rangel is not required to show past persecution in order to establish a well-founded fear of future persecution. *See Zhao*, 404 F.3d at 308). But *Zhao*'s legal principle is inapposite, for the BIA did not treat past persecution as a prerequisite to finding a well-founded fear of future perse-

cution.  Instead, Rangel chose to support her claim of future persecution on the same basis as her past persecution claim.  In other words, both of her claims rely on the *same* allegations and the *same* evidence—namely, her belief that the Mexican Navy ransacked her home to dissuade her from campaigning against them.  Accordingly, the I.J.'s and BIA's assessments of the allegations and evidence underlying Rangel's past persecution claim *necessarily* bear on her future persecution claim.

*Second*, Rangel claims the BIA legally erred by requiring them to show that they would be killed upon returning to Mexico.  She points to the I.J.'s opinion, which stated that it was "implausible that the Mexican [N]avy would target [petitioners] and *kill* them if they returned to Mexico" (emphasis added).

Wrong.  Neither the I.J. nor BIA imposed such a requirement.  The I.J. was merely responding to the possible future harms that *petitioners had asserted*.  Indeed, it was petitioners who said that "the Mexican [N]avy would likely seek to disappear or kill Rangel, her husband, and her daughters."  Reviewing the record in full shows that the I.J. and BIA considered this along with other kinds of harms when assessing Rangel's fear of future persecution.

### 2. Evidence

Rangel contends that she has satisfied her burden[10] of establishing a well-founded fear of future persecution.  Specifically, she claims that the record compels the conclusion that the Navy has the inclination to punish petitioners when they return to Mexico.

Again, Rangel's contention is meritless.  Ample evidence supports the

---

[10] Rangel did not establish past persecution, so she was not entitled to a rebuttable presumption of a well-founded fear of persecution.  *See* 8 C.F.R. § 1208.13(b)(1).

I.J.'s and BIA's determination.

The record shows that Rangel had publicly spoken out against the Mexican Navy—appearing on news media and meeting with various officials—"consistently and repeatedly over a period of four months without suffering any physical harm." Neither Rangel nor her daughters suffered any "harm, threats, or reprisals whatsoever" until their home was ransacked. And, even if the Navy was so inclined, there is no indication that it remains interested in, or is still actively searching for, petitioners. Indeed, the fact that "no further threats . . . took place" after the ransacking cuts against the objective reasonableness of Rangel's fear. *Gjetani*, 968 F.3d at 399; *see also supra* part III.A.2. Thus, the record does not compel us to reverse the I.J.'s and BIA's conclusions that the Navy is not inclined to punish Rangel or her daughters upon their return to Mexico.

In reply, Rangel alludes to the 2015 disappearance of her other son, Jonathan, who chose not to flee to the United States. But Jonathan's disappearance is irrelevant to Rangel's asylum claim. No evidence suggests that the two disappearances are connected. Further, in her testimony before the I.J., Rangel admitted that Jonathan's disappearance "was likely unrelated to [her other son's] disappearance." Thus, Rangel failed to link her campaigning against the Navy with Jonathan's disappearance. Accordingly, the record allowed the I.J. and BIA to conclude that the Navy was not currently interested, or actively searching for, petitioners.

Consequently, the record not does not compel our concluding that Rangel and her daughters have a well-founded fear of future persecution. Rangel fails to show that the evidence compels a finding of past persecution or a well-founded fear of future persecution. So, the I.J. and BIA did not err in rejecting her asylum claim.

No. 23-60089

## IV.

The BIA denied petitioners' separate applications for withholding of removal after it determined that they were not eligible for asylum.[11]  Petitioners baldly assert that the BIA's denial "was erroneous and should be remanded."

Erroneous it is not.  Withholding of removal is a higher standard than asylum.  Where an alien "does not meet the bar for asylum, she also does not meet the standard for withholding of deportation."[12]  As explained earlier, petitioners have failed to demonstrate they suffered past persecution or have a well-founded fear of future persecution.  *See supra* part III.

Since persecution is an essential element of a successful application for withholding of removal, *see* 8 C.F.R. § 1208.16(b)(1)–(2), the BIA did not err in denying petitioners' applications.

## V.

An alien demonstrates eligibility for CAT relief by showing that (1) it is "more likely than not that the alien will be tortured upon return to her homeland," and (2) "there is sufficient state action involved in that torture."[13]  "To meet th[at] burden, the alien may produce evidence of past torture, an inability to relocate to a safer part of the country, human rights abuses

---

[11] "[W]ithholding of removal does not provide relief to the spouse or minor children of an alien." *Arif v. Mukasey*, 509 F.3d 677, 681 (5th Cir. 2007) (per curiam).  That means we must evaluate each petitioner's application separately.  But petitioners' applications are materially identical.  So, as a practical matter, petitioners win or lose as one.

[12] *Efe v. Ashcroft*, 293 F.3d 899, 906 (5th Cir. 2002) (cleaned up); *see also Ghotra v. Whitaker*, 912 F.3d 284, 288 (5th Cir. 2019) (describing the "more likely than not" standard for withholding of removal as "a higher bar than the 'well-founded fear' standard for asylum" (cleaned up)).

[13] *Tamara-Gomez*, 447 F.3d at 350 (cleaned up); *see* 8 C.F.R. § 208.18(a)(1) (defining torture).

No. 23-60089

committed within the country, and any other relevant information." *Majd*, 446 F.3d at 595–96 (citing 8 C.F.R. § 208.16(c)(3)).

Petitioners claim they are entitled to CAT relief because they believe that the Mexican Navy would torture them upon their return to Mexico.[14] But torture is a higher bar than is persecution. *Qorane*, 919 F.3d at 911 (quoting *Efe*, 293 F.3d at 907). That is fatal to petitioners' CAT claims.[15]

Since the basis for relief advanced by petitioners "did not even rise to the level of persecution, it follows *a fortiori* that it does not constitute torture." *Id.* (cleaned up). The BIA did not err in denying their applications for CAT relief.

＊　　＊　　＊　　＊　　＊

Petitioners seek review of the BIA's order denying their applications for asylum, withholding of removal, and CAT relief. The BIA did not err in denying their applications.

The petition for review is DENIED.

―――――――――――――――――

[14] CAT does not provide for derivative beneficiaries. *See Arif*, 509 F.3d at 682.

[15] Additionally, Louisa's and Mary's claims are based entirely on Rangel's experiences. So, Louisa's and Mary's claims independently fail because neither "would be personally at risk" of torture. *Cf. Qorane*, 919 F.3d at 911 (analyzing incidents "specific to" the alien).