# United States Court of Appeals
# for the Fifth Circuit

No. 24-60548

United States Court of Appeals
Fifth Circuit

**FILED**
June 11, 2026

Lyle W. Cayce
Clerk

DMITRII TROPSKII,

*Petitioner*,

*versus*

TODD WALLACE BLANCHE, *Acting U.S. Attorney General*,

*Respondent*.

_____

Petition for Review of an Order of the Board of Immigration Appeals
Agency No. A249 116 908

_____

Before KING, SOUTHWICK, and HAYNES, *Circuit Judges*.

PER CURIAM:[*]

Dmitrii Tropskii, a native and citizen of Russia, petitions for review of the Board of Immigration Appeals' decision upholding the immigration judge's denial of asylum, withholding of removal, and protection under the Convention Against Torture. We DENY the petition.

_____

[*] This opinion is not designated for publication. *See* 5TH CIR. R. 47.5.

No. 24-60548

## FACTUAL AND PROCEDURAL BACKGROUND

Tropskii admitted the factual allegations of his notice to appear, and the immigration judge (IJ) determined he was removable as charged because he lacked a valid entry document when he applied for admission to the United States. The IJ designated Armenia as the country of removal, at Tropskii's request, and Russia as an alternate country.

Seeking relief from removal, Tropskii applied for asylum, withholding of removal, and protection under the United Nations Convention Against Torture (CAT). He alleged past persecution and fear of future persecution and torture in Russia because of his political opinion and various activities opposing the Russian government and its war in Ukraine, as well as his refusal to comply with a conscription notice from the Russian military.

The IJ conducted a merits hearing in May 2024. Tropskii was represented by counsel at that hearing but had been acting *pro se* before then. The admitted documentary evidence included the State Department's 2022 Human Rights Report on Russia; articles about four instances in which Russian authorities arrested or detained someone who allegedly supported Alexei Navalny's political organization opposing the Russian government, supported Ukraine, or opposed the war in Ukraine; and a written declaration by an associate of Tropskii describing the danger to those in Russia who opposed the government or the war.

Tropskii was the sole witness at the hearing. The following is an overview of his relevant testimony. He was 47 years old at the time of the hearing in May 2024 and lived in Sochi, Russia, before leaving for Armenia in 2022 and ultimately the United States in 2023. He attended his first anti-government political rally in 2011 in Moscow. He thereafter attended at least ten rallies in Russia from 2011 to 2023 and became involved in various anti-

government groups, including that of the late opposition leader Alexei Navalny.

In March 2022, Tropskii engaged in a solitary picket in Sochi by carrying a sign protesting Russia's war with Ukraine. He was arrested, convicted of an administrative offense for failing to observe the procedures required for holding a public event, and served five days' confinement. According to Tropskii, that conviction was based on a police major's false report indicating that Tropskii had encouraged others to join his picket and had conducted various illegal activities. The major, who headed one of the police units, threatened Tropskii by insulting him and promising to fight dissidents like him. After Tropskii's release, the police periodically issued him warning notices concerning illegal activities and visited his relatives to urge that they discourage him from his political activities. The police last visited Tropskii in May 2022, a few months before he left Russia. He and his relatives were never physically harmed in Russia.

Tropskii was also involved in an unrelated criminal case. After it was dismissed or at least halted in May 2022, he applied for and obtained a Russian passport. In September 2022, he left Russia for Armenia, where Russian citizens were permitted to enter and depart without a visa and stay for up to 180 days without registration. Although Tropskii feared the Russian government, he returned to Russia four or five times to visit his gravely sick mother. Her condition was such that he believed after each visit that he had seen her for the last time. During those visits, he entered Russia without incident by plane or car and had his passport stamped by border officials. He stayed in Russia for about one week each time. His mother died in May 2023, and he left Russia in June 2023 and has not returned. He was not aware of any efforts by Russian authorities to search for him or visits by authorities to his relatives regarding him from the time he last left Russia up to his testimony.

No. 24-60548

Tropskii received a conscription notice for the Russian army in October 2022. He testified that if he were removed to Russia, he would be arrested and criminally charged because of his various political activities, including his past participation in Navalny's organization (considered an extremist entity in Russia), and his refusal to comply with the conscription notice, a criminal offense carrying up to two years of imprisonment. Tropskii knew of other people who were arrested for such activities; that conscription notices were sent to political activists to pressure them; and that inmates, especially activists, often were harmed in prison through violence, rape, and harsh punishments such as solitary confinement and sleep deprivation.

The IJ found Tropskii credible but determined he failed to demonstrate entitlement to any relief from removal.

Regarding fear of future persecution based on political opinion, the IJ found that, although Tropskii had testified credibly, he established neither a genuine subjective fear nor an objectively reasonable fear because he continued to interact with Russian authorities when repeatedly visiting, he had no problems with them during those visits, he was not physically harmed or threatened while visiting, and to his knowledge, authorities have not searched for him or visited his relatives since he first departed in September 2022.

Concerning a well-founded fear of persecution specifically relating to conscription, the IJ relied on a BIA precedent holding that a country's military conscription and punishment for evading conscription generally does not constitute persecution. Further, the IJ determined that Tropskii did not meet either exception to that rule because a sentence of up to two years' imprisonment for conscription evasion in Russia was not a disproportionately severe punishment based on a protected ground, and

because Tropskii failed to show he necessarily would be required to engage in inhumane conduct in the Russian military.

In finding that Tropskii failed to show the probability of torture that the CAT requires, the IJ reasoned that (1) Tropskii was never persecuted or physically harmed in the past; (2) the country-conditions evidence of human rights abuses in Russia was generalized and did not establish that Tropskii personally would be at risk, particularly given his several visits to Russia without incident since September 2022; and (3) the likelihood that Tropskii would be detained and then suffer harm in prison amounting to torture was speculative at best, as he had returned to Russia repeatedly without incident.

The IJ ordered that Tropskii be removed to Armenia, or to Russia should Armenia decline to accept him.

Tropskii appealed *pro se* to the Board of Immigration Appeals (BIA), which adopted and affirmed the IJ's decision and added reasons rejecting Tropskii's appellate challenges. Notably, the BIA determined Tropskii had not raised a claim before the IJ that there was a pattern or practice of persecution in Russia against individuals similarly situated to him, and the BIA rejected Tropskii's appellate argument on the issue because he was not permitted to raise the claim for the first time on appeal. The BIA added that even if the issue were not forfeited, Tropskii failed to establish an objectively reasonable fear of persecution on that basis.

Tropskii timely filed a petition for review. After he moved to stay his removal, this court ordered that his removal order be administratively stayed pending the disposition of his stay motion. This court later issued an order to carry Tropskii's stay motion with the case and to extend the administrative stay until resolution of the case.

No. 24-60548

DISCUSSION

Tropskii challenges the agency's determination that he failed to demonstrate a well-founded fear of persecution as required for asylum eligibility, the requisite likelihood of persecution for withholding of removal, and the requisite likelihood of torture for CAT protection. He does not brief, and we therefore do not consider, whether his past harm in Russia amounted to persecution. *See Carreon v. Garland*, 71 F.4th 247, 255 (5th Cir. 2023).

This court reviews the BIA's decision and considers the IJ's decision only to the extent it influenced the BIA. *Mejia-Alvarenga v. Garland*, 95 F.4th 319, 323 (5th Cir. 2024). Where, as here, the BIA adopts and affirms the IJ's decision, this court may review both the BIA's and IJ's decisions. *See Wang v. Holder*, 569 F.3d 531, 536 (5th Cir. 2009).[1] We apply the substantial evidence standard to the agency's factual determinations that an individual is not eligible for asylum, withholding of removal, and CAT protection. *See Chen v. Gonzales*, 470 F.3d 1131, 1134 (5th Cir. 2006). Substantial evidence "is more than a mere scintilla, but means — and means only — such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Urias-Orellana v. Bondi*, 146 S. Ct. 845, 850 (2026) (quotations omitted). Thus, under the substantial evidence standard, "findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." *Id.* (quotation omitted).

I. *Asylum*

Asylum is a discretionary grant of relief. *See Cabrera v. Sessions*, 890 F.3d 153, 159 (5th Cir. 2018). To be eligible, an applicant must qualify as a refugee. 8 U.S.C. § 1158(b)(1)(A). As relevant here, a refugee means "any

---

[1] Because the fact-finding and legal reasoning is expressed in the IJ's opinion, then received the BIA's approval, we will often simply refer to the IJ's opinion in our analysis.

person who is outside any country of such person's nationality . . . and who is unable or unwilling to return to . . . that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). "The burden of proof is on the applicant to establish" that "race, religion, nationality, membership in a particular social group, or political opinion was or will be at least one central reason for persecuting the applicant." *Id.* § 1158(b)(1)(B)(i). The substantial evidence standard applies to the agency's factual findings and determination whether those facts constitute persecution. *Urias-Orellana*, 146 S. Ct. at 851 (2026).

An applicant "shows a well-founded fear of future persecution by establishing that a reasonable person in her circumstances would fear persecution if she were to be returned to her native country." *Rangel v. Garland*, 100 F.4th 599, 607 (5th Cir. 2024) (quotation omitted). An applicant who demonstrates past persecution on account of a protected ground shall be presumed to have a well-founded fear of persecution. 8 C.F.R. § 1208.13(b)(1). Even without a showing of past persecution, as here, the applicant may establish a well-founded fear of future persecution by showing a subjective fear of persecution that is objectively reasonable. *Cabrera*, 890 F.3d at 159–60. A fear of persecution is objectively reasonable where the applicant

> [(1)] possesses a belief or characteristic a persecutor seeks to overcome by means of punishment of some sort; (2) the persecutor is already aware, or could become aware, that the [applicant] possesses that belief or characteristic; (3) the persecutor has the capability of punishing the [applicant]; and (4) the persecutor has the inclination to punish the [applicant].

*Rangel*, 100 F.4th at 607–08 (quotation omitted).

No. 24-60548

The applicant need not show that he *will* be persecuted. *Chen*, 470 F.3d at 1135. Instead, a "reasonable possibility" of persecution is enough to demonstrate that an applicant's fear is well-founded. *INS v. Cardoza-Fonseca*, 480 U.S. 421, 440 (1987) (quotation omitted). In *Cardoza-Fonseca*, the Supreme Court twice alluded to a 10% chance of persecution in discussing what would be sufficient to establish a well-founded fear. 480 U.S. at 431, 440. Regarding those references, this court has stated it was doubtful the Supreme Court "was attempting to quantify the precise level of risk (and the precise degree of severity) necessary to demonstrate what is reasonably possible in every case." *Qorane v. Barr*, 919 F.3d 904, 910 n.2 (5th Cir. 2019). More recently, though, this court explained that a "'reasonable degree' can mean a ten percent chance." *Argueta-Hernandez v. Garland*, 87 F.4th 698, 708 (5th Cir. 2023), *abrogated in part on other grounds by Riley v. Bondi*, 606 U.S. 259, 266–72 (2025). An applicant may demonstrate a well-founded fear of persecution either by showing he would be singled out for persecution or that there is a pattern or practice in his country of persecution of a group similarly situated to him. *Cabrera*, 890 F.3d at 160.

### A. Political Activities

Tropskii contends he established a well-founded fear of persecution based on his political opinion opposing the Russian government and his various political activities, including involvement in Navalny-affiliated organizations deemed extremist in Russia. He argues he raised claims that he would be singled out for persecution on those grounds and that a pattern or practice of persecution existed against similarly situated individuals. He contests the BIA's determination that he failed to raise a pattern-or-practice claim before the IJ, asserting that he provided testimony and documentary evidence about Russia's treatment of other similarly situated individuals and his fear of suffering similar harm.

8

Tropskii has not shown the evidence compels the conclusion that a reasonable possibility exists that the Russian government "would target him for persecution." *Qorane*, 919 F.3d at 910. Tropskii did not establish any past persecution. Further, his fear of future persecution is belied by such evidence as the fact that Russian authorities provided him a passport; he repeatedly returned to Russia without incident; and there is no evidence that Russian authorities had searched for him or visited his family from his departure up to his testimony. The agency's conclusion that Tropskii lacked a well-founded fear of persecution thus rested on substantial evidence that, regardless of whether Tropskii had a subjective fear, it was not objectively reasonable because the Russian government has not demonstrated it possesses "the inclination to punish" him. *Rangel*, 100 F.4th at 608 (quotation omitted). The BIA also correctly ruled that Tropskii had forfeited a pattern-or-practice claim by not raising such a claim before the IJ. Tropskii alleges he made such a claim to the IJ, but the only record citations he provides in support are to his brief submitted to the BIA.

### B. Conscription

"[P]unishment for violation of conscription laws of general applicability does not in itself constitute 'persecution' on account of political opinion." *Milat v. Holder*, 755 F.3d 354, 361 (5th Cir. 2014). "A fear of persecution based only on a refusal to be conscripted into military service is not sufficient." *Id.* at 362. Instead, Tropskii "must show that he fears persecution from the [Russian] government *because of* his political opinion, rather than because of his refusal to serve." *Id.*; *see also Vazquez-Guerra v. Garland*, 7 F.4th 265, 269 (5th Cir. 2021) (recognizing that the persecutor's motivation, not the victim's, is the touchstone of the analysis regarding whether the feared persecution is on account of a protected ground). Furthermore, "prosecution for avoiding military conscription may constitute 'persecution' only if the applicant shows either (1) the penalty imposed

would be disproportionately severe on account of a protected ground, or (2) the applicant would be required to engage in inhumane conduct as part of military service." *Milat*, 755 F.3d at 361.

Regarding the first route, the IJ ruled that a prison sentence of up to two years in Russia for evasion of conscription did not constitute the disproportionately severe punishment required. Tropskii argues the IJ failed to adequately consider what two years of confinement in a Russian prison would entail for a political dissident like him, citing the State Department's 2022 Human Rights Report on Russia. That report indicated there were "harsh and life-threatening conditions in prisons," including "[o]vercrowding, abuse by guards and inmates, limited access to health care, food shortages, and inadequate sanitation," and that "[p]hysical and sexual abuse by prison guards was systemic." Additionally, the State Department recounted that political prisoners were reportedly "placed in particularly harsh conditions and subjected to punitive treatment within the prison system, such as solitary confinement or punitive stays in psychiatric units," and anti-war activists were reportedly the victims of "numerous instances of abuse and torture."

Substantial evidence supports the agency's conclusion that two years' imprisonment, which Tropskii testified is the punishment he would face, did not constitute a disproportionately severe punishment. We have held that "punishment for violation of conscription laws of general applicability does not in itself constitute 'persecution' on account of political opinion." *Milat*, 755 F.3d at 361, 363. Tropskii emphasizes that prison conditions in Russia may be especially harsh for political prisoners, but agency findings can withstand substantial evidence review even if, as here, "[s]ome evidence in the record suggests that the . . . government subjects the country's citizens to inhumane treatment for evading" conscription. *Id.* at 363 & n.7.

Indeed, Tropskii's circumstances resemble those in *Milat*, where this court concluded that the applicant failed to show "that he would be singled out and disproportionately punished for evading conscription." 755 F.3d at 363–64. That was because "the Eritrean government repeatedly furnished him with travel documents, his university certificate, and other information after he had fled the country," which "tends to undermine his argument that the Eritrean government views him as a political opponent." *Id.* at 364. Similarly, we rejected a claim of a fear of persecution when the applicant had traveled on multiple occasions without incident from his home country of Venezuela to the United States. *Rubio v. Bondi*, 147 F.4th 568, 581 (5th Cir. 2025). We also conclude the agency's finding was objectively reasonable that Tropskii failed to demonstrate a reasonable possibility of being targeted for conscription evasion and disproportionately punished in prison. That is because he received his conscription notice in October 2022 but subsequently visited Russia four or five times without incident.

Regarding the second way he sought to show persecution through conscription, the IJ stated Tropskii failed to demonstrate he necessarily would be required to engage in inhumane conduct. The IJ reasoned that there was insufficient evidence concerning the role Tropskii would serve in the military and that, regardless, Tropskii testified he would refuse unequivocally to join the Russian military. The BIA upheld the IJ's conclusion that, in Tropskii's circumstances, refusing conscription was not a valid basis for asylum protection.

No. 24-60548

Tropskii contends the country-conditions[2] evidence indicates members of the Russian military engaged in egregious acts in Ukraine that met the standard of inhumane conduct. He also argues he should not bear the burden of proving his precise role in the military and needed to show only that he would be part of a military that engaged in inhumane acts, and that the IJ circularly reasoned that Tropskii's refusal to serve meant he could not meet the inhumane-conduct standard.

Substantial evidence, however, supports the agency's conclusion that Tropskii's unequivocal intent to refuse conscription meant he could not show he would be required to act inhumanely in military service. Tropskii testified he "would not be participating in any military operations," and would therefore be imprisoned. We have already stated that a possible two-year sentence for refusing conscription is not an improper sentence. This gave the IJ reasonable grounds to conclude that Tropskii thus would not "be required to engage in inhumane conduct *as part of military service*." *Milat*, 755 F.3d at 361 (emphasis added). Tropskii's challenge to the agency's denial of asylum therefore fails.

## II.    *Withholding of Removal*

"To be eligible for withholding of removal, an applicant must demonstrate a clear probability of persecution" based on a protected ground. *Chen*, 470 F.3d at 1138 (quotation omitted); *see* 8 U.S.C. § 1231(b)(3)(A). To

---

[2] The State Department's report discussed the war in Ukraine by describing several human rights violations; these are examples: "Russia's armed forces committed numerous war crimes and other atrocities and abuses," with "credible reports of summary execution, torture, rape, indiscriminate attacks, and attacks deliberately targeting civilians and civilian infrastructure" in Ukraine; Russia's forces or Russia-led proxies reportedly performed thousands of extrajudicial killings of civilians in Ukraine; the Russian government engaged in forced deportations of civilians from Ukraine to Russia, including adoptions of children from Ukraine," and other violations of international law.

do so, the applicant "must show that 'it is more likely than not' that his life or freedom would be threatened by persecution." *Efe v. Ashcroft*, 293 F.3d 899, 906 (5th Cir. 2002) (quoting 8 C.F.R. § 208.16(b)(1)).

"[T]he requirement of 'clear probability' of persecution requires the applicant to show a higher objective likelihood of persecution than that required for asylum." *Chen*, 470 F.3d at 1138 (quotation omitted). Because the evidence does not compel us to conclude Tropskii's fear of persecution is well-founded under the lower objective standard for asylum, we necessarily conclude he is not eligible for withholding of removal under the higher objective standard. *See id.*

### III.    *Convention Against Torture*

A claim under the Convention Against Torture is distinct from claims for asylum and withholding of removal and must be analyzed separately. *Santos-Alvarado v. Barr*, 967 F.3d 428, 436 (5th Cir. 2020). To obtain protection under the CAT, an applicant must "establish that it is more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 1208.16(c)(2). "Torture is defined as any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person" by, "or with the consent or acquiescence of, a public official acting in an official capacity or other person acting in an official capacity." *Id.* § 1208.18(a)(1).

Here, the agency determined Tropskii failed to show the requisite likelihood of torture in Russia. Tropskii argues the evidence satisfied the CAT standard, the agency improperly relied on its asylum analysis to deny CAT protection, and the agency improperly tied the requisite likelihood of torture to whether the Russian government was aware of Tropskii's anti-government political opinion. We review the evidence and the applicable legal standards.

First, the IJ permissibly cited the fact that Tropskii did not experience past harm constituting persecution to determine that he necessarily did not experience past torture. *See id.* § 208.16(c)(3)(i) (listing "[e]vidence of past torture inflicted upon the applicant" as a factor in assessing a CAT claim); *Martinez-Lopez v. Barr*, 943 F.3d 766, 772 (5th Cir. 2019) (applying this regulation and finding that the lack of past torture inflicted upon the applicant there weighed against CAT relief). Given that "the incidents specific to" Tropskii "do not even rise to the level of persecution," it "follows *a fortiori* they do not constitute torture." *Qorane*, 919 F.3d at 911. The IJ also reasonably found that the generalized country-conditions evidence in the record did not constitute grounds that Tropskii specifically would be at risk of torture. *See id.* at 911 ("Generalized country evidence tells us little about the likelihood state actors will torture any particular person.").

Additionally, based on the IJ's findings of fact, which substantial evidence supports, the IJ permissibly deemed speculative the prospect that Tropskii would be tortured based on his various political activities and his conscription resistance. The IJ reasonably concluded that those factors were outweighed by the countervailing evidence regarding Tropskii's visits to Russia. The evidence Tropskii emphasizes does not compel a contrary result regarding his CAT claim.

The petition for review is DENIED. The motion for stay of removal pending review is DENIED AS MOOT. This court's administrative stay is VACATED.[3]

---

[3] Tropskii should be removed to Armenia and should be sent to Russia only if Armenia refuses to admit him.